Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHAD EICHENBERGER, individually and on behalf of all others similarly situated, | Case No.: 2:14-cv-00463 |
| Plaintiff, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| v. | |
| ESPN, INC., a Delaware corporation, | |
| Defendant. | |

Plaintiff Chad Eichenberger ("Eichenberger") brings this First Amended Class Action Complaint and Demand for Jury Trial ("Complaint"), individually and on behalf of all others similarly situated, against Defendant ESPN, Inc. ("ESPN") to put an end to its wrongful practice of disclosing its users' sensitive information, and to obtain redress for such conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 1 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1

**NATURE OF THE ACTION**

2     1.     ESPN is one of the largest producers of sports-related news and entertainment

3  programming in the world. Perhaps best known for its eponymous television channel, ESPN also

4  offers content to consumers via other media including its proprietary software application (the

5  "WatchESPN Channel") that it developed for use with a digital media-streaming device called

6  the Roku.[1]

7     2.     Unbeknownst to ESPN users, each time they use the WatchESPN Channel to

8  watch sports or other media content, ESPN knowingly discloses their personally identifiable

9  information—including a record of every video clip viewed by the user (collectively, "PII")—to

10 unrelated third parties. In addition to demonstrating a disregard for its users' privacy rights,

11 ESPN's actions also violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"),

12 which prohibits companies from disclosing their customers' video viewing records to third

13 parties without express written consent.

14    3.     ESPN's violations of the VPPA are particularly flagrant here, as it programmed

15 the WatchESPN Channel to transmit users' PII to a third party data analytics company. The

16 business models of such "big data" analytics companies center on the collection of disparate

17 pieces of uniquely identifying information and online behavioral data about individual

18 consumers, which they then compile to form comprehensive profiles about a person's entire

19 digital life. These profiles can then be used for targeted advertising, sold as a commodity to other

20 data brokers, or both.

21    4.     In an era when the collection and monetization of consumer data proliferates on

22 an unprecedented scale, it's important that companies are held accountable for the exploitation of

23 their users' sensitive information. ESPN chose to disregard Plaintiff's and thousands of other

24 users' statutorily protected privacy rights by releasing their sensitive data into the marketplace.

25

26 [1]     Roku is a digital media-streaming device that delivers videos, news, games, and other content to consumers' televisions via the Internet.

27

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT                    - 2 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

Accordingly, Plaintiff brings this Complaint against ESPN for its intentional and unlawful disclosure of his PII in violation of the VPPA.

**PARTIES**

5.      Plaintiff Chad Eichenberger is a natural person and citizen of the State of Washington.

6.      Defendant ESPN, Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business located at 935 Middle Street, Bristol, Connecticut 06010. ESPN conducts business throughout this District, the State of Washington, and the United States.

**JURISDICTION AND VENUE**

7.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the VPPA. This Court has personal jurisdiction over ESPN because it conducts business in this District and the wrongful conduct occurred in, was directed to, and/or emanated from this District.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) because ESPN conducts business in this District, the improper conduct alleged in this Complaint occurred in this District, the injury arose in this District, and Plaintiff resides in this District.

**FACTUAL BACKGROUND**

I.      **ESPN Programmed the WatchESPN Channel to Transmit Users' PII and Video Viewing Activity to a Third Party Data Analytics Company Without Users' Consent.**

9.      The WatchESPN Channel is a software application that allows consumers to view ESPN's sports-related news and entertainment programming on their televisions via the Roku media-streaming device.

10.     To install the application on a Roku, users must visit the Roku Channel Store—Roku's proprietary online digital media platform where users can download applications (called "channels") that allow them to view specific television shows or video clips on their devices.

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1    11.    Once downloaded and installed, and upon opening the application, the

2  WatchESPN Channel presents a main home screen where the user can view certain of ESPN's

3  proprietary video programming. (*See* <u>Figure 1</u> below, showing the WatchESPN Channel's main

4  home screen.)

5

6

7

8    

9

10

11

12

13

14

15

16

17

18    

19

20

21

22

23

24    (<u>Fig. 1.</u>)

25    12.    At no time during this process, however, does ESPN seek or obtain the consent of

26  the user to share or otherwise disclose his or her PII to third parties for any purpose.

27

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 4 -

**EDELSON PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

**A.    The WatchESPN Channel sends its users' video viewing records and uniquely identifying PII to the third party data analytics company Adobe.**

13.    The WatchESPN Channel is organized into categories accessible through the software's main user interface. (*See* Figure 1 above; *see also* Figure 2 below, showing the WatchESPN Channel's graphical user interface.) Users may browse these sections to view sports-related events, news, and ESPN's own proprietary entertainment programming. (*See id.*)



(Fig. 2.)

14.    Unbeknownst to its users, however, each time they view a video clip, the WatchESPN Channel sends a record of the transaction to Adobe, an unrelated third party data analytics company.[2] The complete record is sent each time that a user views a video clip, along with the serial number associated with the user's Roku device.

**II.    Data Analytics Companies Rely on Unique Identifiers Associated with Digital Devices to Create Dossiers On Consumers and Their Digital Behaviors.**

15.    Today's average consumer uses more than one device to access the Internet to do

---

[2]    Adobe is a company that offers data analytics and online marketing services that it claims "allow [its] customers to create groundbreaking digital content, deploy it across media and devices, measure and optimize it over time, and achieve greater business success." *See* Adobe Company, http://www.adobe.com/company.html?promoid=JZPLK (last visited March 25, 2014). Using its services, Adobe says, helps companies "make, manage, measure, and monetize their content across every channel and screen." *Id.*

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 5 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1   things like view digital content or make online purchases. This creates challenges for online

2   advertisers and data analytics companies. Namely, to gain a broad understanding of a given

3   consumer's behavior across all of the devices and applications that an individual uses, these

4   companies have to find ways to "link" their digital personas. The primary solution has been to

5   use unique identifiers to connect the dots.

6        16.    Unique identifiers are used to precisely identify a person and to link their

7   activities across devices and applications. Data analytics companies—like Adobe—create user

8   profiles comprised of behavioral data and unique identifiers, often supplied by hardware

9   manufacturers.

10       17.    An example of a hardware manufacturer unique identifier in the consumer

11  electronics context is a device's serial number. That's because device serial numbers are

12  "persistent identifiers," meaning they are unique to a specific device and remain constant for its

13  lifetime.

14       18.    Roku itself explicitly acknowledges that its devices' serial numbers are linked to

15  the identities of their purchasers. In its Privacy Policy, Roku states that "[u]sage information

16  uploaded from Roku Devices is personally identifiable by product serial number" and that the

17  identifier can even be used to determine, among other demographic information, the precise store

18  and location where the product was purchased.[3]

19       19.    Once Adobe matches a Roku serial number with an individual's identity, it's

20  exceedingly difficult for that person to avoid being tracked via their Roku device—making it

21  among the most stable and reliable identifiers for a given individual.

22       20.    For these reasons, developers of software for the Roku rely on the device's serial

23  number to identify and track individual users.[4]

24  _____

[3]      Roku Privacy Policy, http://www.roku.com/about/privacy (last visited June 4, 2014).

25  [4]     *See* Parker Higgins and Lee Tien, *Mobile Tracking Code of Conduct Falls Short of
    Protecting Consumers*, Electronic Frontier Foundation (Oct. 26, 2013), *available at*

26  https://www.eff.org/deeplinks/2013/10/mobile-tracking-code-conduct-falls-short-protecting-
    consumers.

27

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370  •  Fax: 312.589.6378

**A.      Adobe and other data analytics companies maintain massive digital dossiers on consumers.**

21.      ESPN partnered with Adobe because its analytics services provide insights into the behaviors and demographics of WatchESPN's user base. This helps ESPN to, among other things, accurately target advertisements to its users.

22.      The reason Adobe (or any other analytics company) is capable of developing a complete understanding of an individual's digital activities is because it collects an enormous amount of information about a given consumer's online behavior (as well as unique identifiers associated with a user's devices) from a variety of sources.

23.      For instance, Roku channels that transmit the device's serial number along with a record of the user's interaction with the software provide analytics companies with an intimate look at the different types of materials consumed by the individual. By way of example, this data may reveal, or help create inferences about, the person's political or religious affiliations, sexuality, or general reading and viewing preferences.

24.      Once Adobe links a Roku's serial number with its owner, it can then connect new information retrieved from a Roku channel—including from the WatchESPN Channel—with existing data in the person's profile (which was previously collected by Adobe from other sources). Evidence suggests that Adobe can determine a person's identity using the Roku serial number because it obtains demographic information from Roku itself.

25.      Roku's Privacy Policy says that it "may share information collected from the Roku Devices with content providers that have developed channels for the Roku Channel Store [like ESPN]" as well as "third parties" that provide Roku with "analytics services."[5] Comments from Adobe's senior employees indicate that Adobe is one of these "analytics services."

26.      The following exchange is from an interview with Adobe's senior product manager, Christopher Comstock, where he talks about the company's ability to identify users

---

[5]      Roku Privacy Policy, http://www.roku.com/about/privacy (last visited June 4, 2014).

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 7 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1   across devices:

2

3   > **Q:** What are your clients requesting when it comes to cross-device matching?

4   > **Mr. Comstock:** This applies to advertisers and publishers. They're asking
5   > us first to be able to identify when they have a known customer ID. They
    > want that ID to be the linking mechanism across different devices. From
    > an AudienceManager standpoint, we can do that and tie those different
6   > device profiles to be a common user profile.[6]

7       27.    Later in the interview, Mr. Comstock discusses the collection of data from Roku
8   devices:

9   > **Q:** Can you go into that? What are the different elements of cross-device
    > your clients are talking about?

10  > **Mr. Comstock:** For us, it's browser-to-browser or browser-to-app.
    > Understanding those relationships. Work vs. home computers,
11  > understanding the behavior across those different devices. Mobile is the
    > current trend but as we add Internet-connected TVs, **Roku devices** and
12  > with Comcast and Freewheel, the digital world is all over the place and it
    > needs to extend beyond mobile, and have a platform able to bring in and
13  > capture devices in general. (Emphasis added).

14      28.    Likewise, the Privacy Policy for Adobe's analytics services states that: "[s]ome

15  companies using Adobe services may send us information that allows them to identify you

16  personally. Some companies may also buy additional information about you and then add that

17  additional information to the information collected by Adobe's products on their websites. This

18  additional information may include things like email addresses, account information, or

19  Facebook profile information, including photos and usernames."[7]

20      29.    But this is only the tip of the iceberg. An excerpt from Adobe's marketing

21  materials, shown in <u>Figure 3</u> on the following page, portrays the vast array of information that

22  feeds into a consumer's digital profile in Adobe's databases using information transmitted from

23  sources like the Roku.

24  ────────────────────

25  [6]    The Cross-Device Question: Adobe, http://www.adexchanger.com/data-exchanges/the-cross-device-question-adobe/ (last visited June 4, 2014).

26  [7]    Analytics and on-site personalization services, http://www.adobe.com/content/dotcom/en/privacy/analytics.html (last visited June 4, 2014).

27

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT      - 8 -
(No. 2:14-cv-00463)

**EDELSON PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

| Types of Customer Data | Characteristics | Source |
|---|---|---|
| One-to-One Data | | Single Marketing View of Customer |
| Scoring Attributes | Lifetime value, RFM, risk score, | Customer Data Warehouse/Business Analytics |
| Implicit Customer Data (Behavioral Information) | Navigation history, opens, clicks, online transactions, other (POS, loyalty card activity...) | Web Analytics, Email, Mobile |
| Explicit Customer Data | Areas of interest, favorite products... | Form Capture, Landing Pages, Website |
| Computed Data | Estimated age, type of home... | Customer Data Warehouse/Business Analytics |
| Sociodemographic Data | Age, category, household structure, income | CRM, Third-Party Data Augmentation |
| Contact Information | Name, first name, address, email, phone number (home, business, or cell) | CRM |

(Fig. 3.)

30.   Figure 3 details the depth of information captured by Adobe's data analytics services. Of particular note are the "sources" of consumer data in the far right column. The graphic's references to these sources—including "Web Analytics" and "Customer Data Warehouse[s]"—implicate software applications (like WatchESPN for the Roku) that collect consumer data. These sources help Adobe generate profiles on individuals containing the wealth of information shown in the middle column of Figure 3. That information includes things like a person's: address, age, phone number, email, purchase history, behavioral activity, and income.

31.   Mr. Comstock also commented on Adobe's wealth of data in his interview, where he stated that, "[Adobe] has much if not more data as the other [data-management] players in the space, and for us it's just taking those data elements and building a privacy-centric view of combining device data, looking at those data points and figuring out who may be the user across numerous devices, when we don't know who they are."[8]

32.   Accordingly, in this context Adobe uses data obtained from either the WatchESPN Channel, Roku, or both, to personally identify users and associate their video

---

[8]    See The Cross-Device Question: Adobe, supra note 6.

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

viewing selections with a personalized profile in its databases.

**B.    The President and Congress are responding to growing privacy concerns over the collection and misuse of personal information in the digital marketplace.**

33.    Concerns over the privacy risks associated with the collection and transmission of PII from digital devices to third parties is no longer just academic musing. In a recently issued sixty-two page policy memo, President Obama squarely addressed the issue, stating that there's a growing problem with consumers' privacy "in the age of the Internet, the World Wide Web and smartphones."[9] While the President's memo provided a "blueprint" for protecting consumers' privacy, he called on Congress to take the lead and pass legislation to curb behavior related to the corporate exploitation of user data.

34.    For its part, Congress has started to take up these issues as well. In 2011, Senators Patrick Leahy and Al Franken established the United States Senate Committee on the Judiciary, Subcommittee on Privacy, Technology, and the Law that, among other things, oversees the laws and policies governing (i) the collection, protection, use and dissemination of commercial information by the private sector, including online behavioral advertising, privacy within social networking websites and other online privacy issues, (ii) privacy standards for the collection, retention, use and dissemination of personally identifiable commercial information, and (iii) privacy implications of new or emerging technologies.[10]

35.    In establishing this Subcommittee, Senator and Subcommittee Chair Al Franken noted that "[t]he boom of new technologies over the last several years has made it easier to keep in touch with family, organize a community and start a business . . . It has also put an

[9]    Consumer Data Privacy In a Networked World: A Framework for Protecting Privacy and Promoting Innovation in the Global Digital Economy, http://www.whitehouse.gov/sites/default/files/privacy-final.pdf (last accessed March 5, 2014).

[10]    United States Senate Committee on the Judiciary, Subcommittee on Privacy, Technology and the Law, http://www.judiciary.senate.gov/about/subcommittees/privacytechnology.cfm (last visited March 5, 2014).

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT          - 10 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1   unprecedented amount of personal information into the hands of large companies that are

2   unknown and unaccountable to the American people."[11]

3          36.    Members of other subcommittees have made similar remarks. In a meeting of the

4   Subcommittee on Consumer Protection, Product Safety, and Insurance, Senator John Rockefeller

5   noted that, "third parties use [consumer data] to target advertising on individuals . . . It is very

6   good business, but it is very cynical. It is an abuse of that power, passing on people's profiles."[12]

7          37.    In response to the increased scrutiny on consumers' privacy concerns, companies

8   are also starting to change their data collection and usage practices. For instance, in the release of

9   Apple's most recent mobile device operating system, iOS 7, Apple discontinued the ability to

10  transmit certain personally identifiable information to third parties for tracking purposes.[13]

11         38.    Despite the controversy surrounding these methods of harvesting and

12  commodifying sensitive consumer data, ESPN chose to disclose WatchESPN Channel users'

13  sensitive information to the third-party data analytics company Adobe.

14  **III.    The VPPA's Importance in the Digital Age.**

15         39.    When the VPPA was introduced, the late Senator Paul Simon noted that, "[e]very

16  day Americans are forced to provide to businesses and others personal information without

17  having any control over where that information goes. These records are a window into our loves,

18  likes, and dislikes." S. Rep. No. 100-599 at 7–8 (1988). Senator Patrick Leahy, one of the

19  original drafters of the VPPA, also remarked that, "the trail of information generated by every

20

21  [11]    Sen. Franken To Chair New Subcommittee on Privacy, Technology and the Law,
22  http://www.franken.senate.gov/?p=hot_topic&id=1315 (last visited March 5, 2014).

23  [12]    S. Hrg. 112-289, Consumer Privacy and Protection in the Mobile Marketplace,
    http://www.gpo.gov/fdsys/pkg/CHRG-112shrg73133/html/CHRG-112shrg73133.htm (last
24  visited February 17, 2014).

25  [13]    iOS 7 Eliminates MAC Address as Tracking Option, Signaling Final Push Towards
    Apple's Own Ad Identifier Technology, http://techcrunch.com/2013/06/14/ios-7-eliminates-mac-
26  address-as-tracking-option-signaling-final-push-towards-apples-own-ad-identifier-technology/
    (last visited March 5, 2014).

27

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT                    - 11 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1  transaction that is now recorded and stored in sophisticated record-keeping systems is a new,

2  more subtle and pervasive form of surveillance." *Id.* at 8.

3        40.     While these statements rang true in 1988 when the act was passed, the importance

4  of legislation like the VPPA in the modern computing era is more pronounced than ever before.

5  During a recent Senate Judiciary Committee meeting, "The Video Privacy Protection Act:

6  Protecting Viewer Privacy in the 21st Century," Senator Leahy emphasized this point, saying

7  that, "[w]hile it is true that technology has changed over the years, we must stay faithful to our

8  fundamental right to privacy and freedom. Today, social networking, video streaming, the

9  'cloud,' mobile apps and other new technologies have revolutionized the availability of

10  Americans' information."[14]

11        41.     Likewise, Senator Al Franken summed up the importance of the VPPA in today's

12  world as follows: "[i]f someone wants to share what they watch, I want them to be able to do so .

13  . . But I want to make sure that consumers have the right to easily control who finds out what

14  they watch—and who doesn't. The Video Privacy Protection Act guarantees them that right."[15]

15  **IV.    Plaintiff Eichenberger's Experience with the WatchESPN Channel.**

16        42.     Starting in early 2013, Plaintiff Eichenberger downloaded and began using the

17  WatchESPN Channel on his Roku media-streaming device to watch sports-related events and

18  news.

19        43.     At no relevant time did Eichenberger consent, agree, or otherwise permit ESPN to

20  disclose his PII to any third-party data analytics companies.

21        44.     Likewise, Eichenberger has never been given the opportunity to prevent the

22

23  [14]    The Video Privacy Protection Act: Protecting Viewer Privacy in the 21st Century, Senate Judiciary Committee Subcommittee on Privacy, Technology and the Law,

24  http://www.judiciary.senate.gov/hearings/hearing.cfm?id=f14e6e2889a80b6b53be6d4e412d460f

25  (last visited February 17, 2014).

26  [15]    *Chairman Franken Holds Hearing on Updated Video Privacy Law for 21st Century,* frank.senate.gov (Jan. 31, 2012), https://www.frank.senate.gov/?p=hot_topic&id=1923.

27

Plaintiff's First Amended
Class Action Complaint
(No. 2:14-cv-00463)

- 12 -

**Edelson PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1    WatchESPN Channel from disclosing his PII to third parties.

2         45.    Nevertheless, each time Eichenberger viewed a video clip using the WatchESPN

3    Channel, ESPN knowingly disclosed his PII—in the form of his unique Roku device serial

4    number, along with the videos he viewed—to third party data analytics company Adobe. Given

5    the wealth of information Adobe possesses about individual consumers, the information

6    disclosed by ESPN to Adobe identified Eichenberger as having watched specific video materials.

7                                   **CLASS ALLEGATIONS**

8         46.    **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2)

9    and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

10              All persons in the United States who used the WatchESPN Channel to watch
11              videos and who had their PII transmitted to Adobe.

12   Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors,

13   predecessors, and any entity in which Defendant or its parents have a controlling interest, and

14   those entity's current and former employees, officers, and directors, (2) the Judge to whom this

15   case is assigned and the Judge's immediate family, (3) persons who execute and file a timely

16   request for exclusion from the Class, (4) persons who have had their claims in this matter finally

17   adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns

18   of any such excluded person.

19        47.    **Numerosity**: The exact number of members of the Class is unknown and is not

20   available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class

21   likely consists of thousands of individuals. Class members can be easily identified through

22   Defendant's records.

23        48.    **Commonality and Predominance**: There are many questions of law and fact

24   common to the claims of Plaintiff and the other members of the Class, and those questions

25   predominate over any questions that may affect individual members of the Class. Common

26   questions for the Class include but are not limited to the following:

27

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

a)      Whether Defendant, through the WatchESPN Channel, unlawfully disclosed and continues to unlawfully disclose its users' personally identifiable information, including their video viewing records, in violation of 18 U.S.C. § 2710(b);

b)      Whether Defendant's disclosures were committed knowingly;

c)      Whether Defendant disclosed Plaintiff's and Class members' personally identifiable information without their consent; and

d)      Whether Defendant violated Plaintiff's and Class members' right to privacy.

49.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

50.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

51.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby requiring the Court's imposition of uniform relief to

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT                    - 14 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1  ensure compatible standards of conduct toward members of the Class. The factual and legal

2  bases of Defendant's liability to Plaintiff and to the other members of the Class are the same,

3  resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the

4  members of the Class have suffered harm and damages as a result of Defendant's unlawful and

5  wrongful conduct.

6      52.    **Superiority**: This case is appropriate for certification because class proceedings

7  are superior to all other available methods for the fair and efficient adjudication of this

8  controversy. The injuries suffered by the individual members of the Class are likely to have been

9  relatively small compared to the burden and expense of individual prosecution of the litigation

10  necessitated by Defendant's actions. Absent a class action, it would be difficult, if not

11  impossible, for the individual members of the Class to obtain effective relief from Defendant.

12  Even if members of the Class themselves could sustain such individual litigation, it would not be

13  preferable to a class action because individual litigation would increase the delay and expense to

14  all parties and the Court and require duplicative consideration of the legal and factual issues

15  presented herein. By contrast, a class action presents far fewer management difficulties and

16  provides the benefits of single adjudication, economy of scale, and comprehensive supervision

17  by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of

18  decisions will be ensured.

19      53.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

20  Definition" based on facts learned through additional investigation and in discovery.

21              **FIRST CAUSE OF ACTION**
              **Violations of 18 U.S.C. § 2710**
22            **(on behalf of Plaintiff and the Class)**

23      54.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

24      55.    Defendant is a "video tape service provider[]" as defined by the VPPA because it

25  "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or

26  delivery or prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C.

27

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT                    - 15 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

§ 2710(a)(4), because it provides video (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers via its WatchESPN Channel.

56.   Plaintiff is a "consumer" as defined by the VPPA because he downloaded, installed, and watched videos using the WatchESPN Channel. 18 U.S.C. § 2710(a)(1). As such, he was a "subscriber" of "goods or services from a video tape service provider." *See id*. Additionally, because Defendant grants him a temporary license to access and view specific videos in exchange for him being exposed to Defendant's advertisements, Plaintiff is also a "renter" of video content from Defendant.

57.   Under the VPPA, the term "personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710 (a)(3). The definition's usage of the word "includes" means that a more expansive reading of the term was expressly contemplated.

58.   While the WatchESPN Channel was installed on his Roku, Plaintiff viewed numerous video clips using the channel. On information and belief, during these occasions, the WatchESPN Channel knowingly sent Plaintiff's PII—including his Roku's serial number and records identifying the videos that he viewed—to the third-party data analytics company Adobe.

59.   As detailed more fully in Section II.A above, the information disclosed by the WatchESPN Channel—the combination of the Roku serial number and video viewing records— constitutes "personally identifiable information" in this context because Adobe adds it to their existing consumer profiles to associate specific individuals with their viewing records.

60.   Thus, Defendant's disclosure of Plaintiff's Roku serial number and video viewing records allowed Adobe to identify him and attribute his viewing choices to his profile.

61.   Consistent with this view, the National Institute of Standards and Technology (NIST) defines "personally identifiable information" as "any information that can be used to

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 16 -

**Edelson PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1    distinguish or trace an individual's identity."[16] As discussed in Section II and throughout this

2    Complaint, Plaintiff's Roku serial number and video viewing records is used by Adobe to

3    distinguish or trace his identity.

4         62.    The WatchESPN Channel's transmissions of Plaintiff's PII to Adobe constitute

5    "knowing[] disclosures" of Plaintiff's "personally identifiable information" to a person as

6    contemplated by the VPPA. 18 U.S.C. § 2710(a)(1).

7         63.    At no time did Plaintiff ever provide ESPN with any form of consent—either

8    written or otherwise—to disclose his PII to third parties.

9         64.    Nor were ESPN's disclosures made in the "ordinary course of business" as the

10   term is defined by the VPPA. In particular, the WatchESPN Channel's disclosures to Adobe

11   were not necessary for "debt collection activities, order fulfillment, request processing, [or] the

12   transfer of ownership." 18 U.S.C. § 2710(a)(2).

13        65.    As a result of Defendant's wrongful disclosures, Plaintiff and the Class have had

14   their statutorily defined right to privacy violated. Plaintiff seeks an injunction to prohibit ESPN

15   from releasing his and the Class's PII in the future, as well as the maximum statutory and

16   punitive damages available under the VPPA. 18 U.S.C. § 2710(c).

17                              **PRAYER FOR RELIEF**

18        Plaintiff Chad Eichenberger, on behalf of himself and the Class, respectfully requests that

19   this Court enter an order:

20        A.     Certifying this case as a class action on behalf of the Class defined above,

21   appointing Plaintiff Eichenberger as representative of the Class, and appointing his counsel as

22   Class Counsel;

23        B.     Declaring that Defendant's actions, as set out above, violate the VPPA, 18 U.S.C.

24   § 2710;

25

26   [16]   NIST Guide to Protecting the Confidentiality of Personally Identifiable Information (PII),
     http://csrc.nist.gov/publications/nistpubs/800-122/sp800-122.pdf (last visited Feb. 17, 2014).

27

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT                    - 17 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1    C.    Awarding injunctive and other equitable relief as necessary to protect the interests

2    of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful

3    acts described herein;

4    D.    Awarding damages, including statutory damages of $2,500 per violation, and

5    punitive damages, where applicable, in an amount to be determined at trial pursuant to 18 U.S.C.

6    § 2710(c);

7    E.    Awarding Plaintiff and the Class their reasonable litigation expenses and

8    attorneys' fees;

9    F.    Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

10   allowable; and

11   G.    Awarding such other and further relief as equity and justice may require.

12                                    **JURY TRIAL**

13   Plaintiff demands a trial by jury for all issues so triable.

14                                    Respectfully submitted,

15                                    **CHAD EICHENBERGER,** individually and on
                                      behalf of all others similarly situated,
16

17   Dated: June 30, 2014             By: /s/ Benjamin H. Richman
                                          One of Plaintiff's Attorneys

18                                    Jay Edelson (Admitted *Pro Hac Vice*)
                                      jedelson@edelson.com
19                                    Rafey S. Balabanian (Admitted *Pro Hac Vice*)
                                      rbalabanian@edelson.com
20                                    Benjamin H. Richman (Admitted *Pro Hac Vice*)
                                      brichman@edelson.com
21                                    J. Dominick Larry (Admitted *Pro Hac Vice*)
                                      nlarry@edelson.com
22                                    EDELSON PC
                                      350 North LaSalle Street, Suite 1300
23                                    Chicago, Illinois 60654
                                      Tel: 312.589.6370
24                                    Fax: 312.589.6378

25

26

27

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 18 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

Cliff Cantor, WSBA # 17893
cliff.cantor@outlook.com
LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074
Tel: 425.868.7813
Fax: 425.732.3752

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 19 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

     I hereby certify that on July 1, 2014, I electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

                                  /s/ Benjamin H. Richman

PLAINTIFF'S FIRST AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 20 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378