HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CHAD EICHENBERGER, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

ESPN, INC., a Delaware corporation,

    Defendant.

NO. 2:14-CV-00463-TSZ

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

NOTE ON THE MOTION CALENDAR: AUGUST 22, 2014

ORAL ARGUMENT REQUESTED

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................. 1

II.  BACKGROUND .................................................................................................... 3

   A.   The VPPA prohibits disclosures that "identify a person." ...................... 3

   B.   WatchESPN transmits Roku device serial numbers to Adobe. .............. 3

   C.   Plaintiff contends that Roku device serial numbers "identify a person" based on conclusory allegations regarding Roku and Adobe. ............... 4

III. ARGUMENT ......................................................................................................... 6

   A.   Plaintiff fails to state a VPPA claim because he does not allege any disclosure of personally identifiable information. ................................. 7

      1.   Plaintiff does not allege that the information allegedly disclosed by WatchESPN identifies a specific person. ...................................... 7

      2.   Plaintiff's reliance on allegations regarding Roku and Adobe does not save his claim. ........................................................................... 9

         (a)   Allegations regarding Roku and Adobe are irrelevant to whether disclosures by WatchESPN constitute personally identifiable information. ............................................................. 10

         (b)   Allegations regarding Roku and Adobe should be disregarded because they are speculative and conclusory. ........... 11

   B.   Plaintiff fails to state a VPPA claim because he is not a "consumer" under the VPPA. .................................................................................... 15

IV.  CONCLUSION .................................................................................................... 16

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - i
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

## I. INTRODUCTION

The Video Privacy Protection Act ("VPPA") prohibits the disclosure of personally identifiable information ("PII"), which the VPPA defines to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3), (b). Congress enacted the VPPA in 1998 in response to a video store's disclosure of a list of videos rented by then-Supreme Court nominee Judge Robert Bork to a newspaper reporter. While courts have since applied the VPPA to new technologies, the fundamental requirement for liability under the VPPA remains the disclosure of information that identifies a person as viewing specific video content. *See In re Nickelodeon Consumer Privacy Litig.* ("*Nickelodeon*"), MDL No. 2443, 2014 WL 3012873, *10 (D.N.J. July 2, 2014) (Under the VPPA, PII "is information that must link 'a specific, identified person and his video habits.'")

Here, Plaintiff asks the Court to ignore this requirement and impose VPPA liability on ESPN for allegedly disclosing the serial number of a device he used to stream ESPN video content to his television over the Internet. The device, which is manufactured and sold by third party Roku Inc., is a set-top box, roughly the size of a hockey puck, that connects to a user's television with a cable. Video content is provided through "channels" that users download from Roku's website. Plaintiff alleges that he downloaded the WatchESPN channel ("WatchESPN") and used it to view ESPN video content. He further alleges that, each time he viewed ESPN video content, WatchESPN transmitted the Roku device serial number and video selection to Adobe—a data analytics company contracted by ESPN to analyze WatchESPN usage patterns, on an aggregated and anonymized basis, to understand and improve the user experience. According to Plaintiff, even though the Roku device serial number does not personally identify him, it is nevertheless PII because Roku disclosed demographic information to Adobe, and Adobe used that information to personally identify him and link his identity to ESPN video content.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 1
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

Plaintiff's allegations fail to state a VPPA claim against ESPN.  *First*, and most fundamentally, the alleged disclosures are not PII.  Plaintiff admits that WatchESPN transmits only Roku device serial numbers to Adobe, but he contends that these 12-digit alphanumeric strings, *in combination with* Roku's alleged disclosure of demographic information to Adobe and Adobe's alleged use of that information to personally identify users and link them to video selections, constitute PII.  The VPPA applies only to a disclosure that "*without more, itself link[s]* an actual person to actual video materials."  *Nickelodeon*, 2014 WL 3012873, at *10 (emphasis added).  Because the alleged disclosures by WatchESPN identify devices, not people, this alone mandates dismissal of Plaintiff's VPPA claim.

*Second*, even if the Court were to accept Plaintiff's theory that Roku device serial numbers constitute PII based on alleged disclosures and alleged actions by Roku and Adobe, Plaintiff's VPPA claim should nevertheless be dismissed because he does not adequately allege that such disclosures and actions occurred.  Under *Twombly/Iqbal*, Plaintiff must allege facts to support a plausible inference that Roku disclosed demographic information to Adobe and that Adobe used that information to personally identify users and link those users to video selections.  As explained below, Plaintiff's reliance on random statements by Roku and Adobe about their services, which either do not address or contradict his allegations, does not come close to meeting this standard.

*Third*, Plaintiff's VPPA claim should be dismissed because Plaintiff does not adequately allege that he was a "consumer," which the VPPA defines as a "renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  Plaintiff alleges that he was a "subscriber" and a "renter," but he does not fall within the common meaning of either term.  He does not allege that he registered or established an account with ESPN or paid money to ESPN to view video content.  Indeed, Plaintiff does not allege that his identity was ever known to ESPN.  Under these circumstances, Plaintiff cannot reasonably claim to be either a "subscriber" or "renter" of ESPN's video content or services.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 2
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

At bottom, the fatal flaw in Plaintiff's VPPA claim against ESPN is that it is based not on information disclosed by ESPN, which Plaintiff admits does not personally identify users, but on alleged disclosures by Roku and Adobe's alleged use of that information. Plaintiff already has filed an amended complaint adding new allegations regarding the PII element of his claim, none of which addresses any ESPN disclosure. Because no further amendment will cure that defect, Plaintiff's First Amended Complaint should be dismissed with prejudice.

## II.   BACKGROUND

### A.   The VPPA prohibits disclosures that "identify a person."

The "impetus" for the VPPA was a newspaper article profiling Judge Robert Bork "based on the titles of 146 films his family had rented from a video store." S. Rep. No. 100–599, at 5 (1988). During the otherwise divisive Senate Judiciary Committee hearings on Judge Bork's Supreme Court nomination, Senators from both parties agreed that the disclosure of Judge Bork's video viewing history by his local video store was an improper invasion of his privacy. *Id.* at 5-6. Congress enacted the VPPA to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Id*. at 1.

Under the VPPA, "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider" is subject to suit in federal court by any person "aggrieved" by such action. 18 U.S.C. § 2710(b)(1). "Personally identifiable information," referred to as "PII," is defined to include "information which identifies a person as having requested or obtained specific video materials." 18 U.S.C. § 2710(a)(3). Certain disclosures are excluded from liability, including disclosures made "incident to the ordinary course of business," to the consumer, or to law enforcement agencies pursuant to a warrant or court order. 18 U.S.C. § 2710(b)(2).

### B.   WatchESPN transmits Roku device serial numbers to Adobe.

Plaintiff alleges that, in addition to cable and satellite, ESPN "offers content to consumers via other media including its proprietary software application (the 'WatchESPN

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 3
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Channel') that it developed for use with a digital media-streaming device called the Roku." First Amended Complaint ("FAC") ¶ 1.  Roku devices, like other "streaming media devices" such as Apple TV and Google Chromecast, stream movies, television shows, music, and other video and audio content to a user's television via the Internet.[1]  A Roku device connects to a user's television with a cable and contains a processor, wireless antenna, and memory to store video content as it streams into the device from the Internet.  Users access content through "channels" (also referred to as "apps") that they download from Roku using its "proprietary online digital media platform" called the Roku Channel Store.  FAC ¶ 10.

Plaintiff alleges that, starting in early 2013, he downloaded and began using WatchESPN on his Roku device "to watch sports-related events and news."  *Id.* ¶ 42.  Users who download, install, and open WatchESPN are presented with a "main user interface" used to browse and view live and pre-recorded sporting events and ESPN original sports-related productions.  *See id.* ¶¶ 11, 13 & Figs. 1-2.  According to Plaintiff, each time he viewed video content on WatchESPN, a record containing the Roku device serial number and the video he viewed was sent to Adobe, a "third party data analytics company."  *Id.* ¶ 14.  Plaintiff does not allege that he provided any personal information to ESPN through WatchESPN, nor could he since there is no registration process or other means by which a WatchESPN user can provide such information.  Nor does he allege that he paid ESPN any money to download or use WatchESPN.

C.     **Plaintiff contends that Roku device serial numbers "identify a person" based on conclusory allegations regarding Roku and Adobe.**

Plaintiff asserts that WatchESPN transmits records containing PII to Adobe.  But he admits that those records contain *only* a Roku device serial number and therefore acknowledges, as he must, that they *do not* contain his name, address, or any other personally identifying information.  Plaintiff attempts to get around the fact that WatchESPN does not actually disclose any PII by cobbling together random statements by Roku and Adobe to allege, on information

---

[1] *For basic information on the Roku device, see generally* https://www.roku.com/meet-roku.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 4
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

and belief, that "Adobe can determine a person's identity using the Roku serial number because it obtains demographic information from Roku itself." *Id.* ¶ 24.  In other words, Plaintiff contends that *WatchESPN's* disclosure of anonymous, 12-digit alphanumeric device serial numbers to Adobe violates the VPPA because *Roku* disclosed unspecified demographic information about users to Adobe and *Adobe* used that information to personally identify users and link them to ESPN video content.  Even if that were a basis for VPPA liability, which it is not for reasons explained below, Plaintiff does not allege a single fact to support a reasonable inference that Roku made such disclosures or that Adobe engaged in such conduct.

Plaintiff alleges that "[e]vidence suggests" that Roku provides Adobe with "demographic information" about users, but the "evidence" Plaintiff points to, Roku's Privacy Policy, does not say anything about "Adobe" or collecting "demographic information" and sharing it with a third party.  Roku's Privacy Policy simply states that it "may share information collected from Roku Devices" with content providers who have Roku channels, such as ESPN, and third parties who provide "analytics services."

Plaintiff next points to "[c]omments from Adobe's senior employees" as showing that Adobe is one of the third parties who provides "analytics services," and that Adobe's "marketing materials" show "the vast array of information that feeds into a customer's digital profile in Adobe's databases using information transmitted from sources like the Roku." *Id*. ¶¶ 25-30.  But, again, this so-called "evidence" does not support Plaintiff's allegations.  The "comments" refer only to the possibility of analytics services collecting information from Roku devices *in the future*, and the "marketing materials" do not expressly or even implicitly identify Roku devices as the source of any of Adobe's supposedly "vast array" of information.  Moreover, Plaintiff ignores statements in the same "marketing materials" that flatly contradict his allegations.  Plaintiff also ignores statements in Adobe's privacy policy for its analytics service, which Plaintiff cites in the FAC, that "Adobe does not use the information we collect for a company except as may be allowed in a contract with that company," which "is usually limited to

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 5
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

providing our services to the company," and even in those instances where Adobe may share information between companies, it "*is anonymous and does not identify individuals*." Declaration of Bryan H. Heckenlively, filed concurrently herewith, ("Heckenlively Decl."), Ex. A (emphasis added).

Accordingly, none of the "evidence" relied upon by Plaintiff shows, or even supports a plausible inference, that Roku provides demographic information to Adobe.  Nor does it support Plaintiff's allegation that Adobe uses Roku device serial numbers provided by WatchESPN to personally identify users and link them to ESPN video content selections.  Indeed, such conduct would be in direct violation of Adobe's privacy policy, which Plaintiff incorporates by reference into the FAC but then conspicuously ignores. *Infra* at 12-14.

### III.    ARGUMENT

A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Although allegations of fact are taken as true, "legal conclusion[s] couched as a factual allegation . . . are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009).  A "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must instead contain "sufficient factual matter" apart from legal conclusions "to state a claim . . . that is plausible on its face."  *Iqbal*, 556 U.S. at 678.  The "court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), amended on other grounds, 275 F.3d 1187 (9th Cir. 2001), and may not indulge unwarranted inferences to save a complaint. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT - 6
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

A.  **Plaintiff fails to state a VPPA claim because he does not allege any disclosure of personally identifiable information.**

1.  **Plaintiff does not allege that the information allegedly disclosed by WatchESPN identifies a specific person.**

Plaintiff alleges that WatchESPN disclosed two pieces of information to Adobe for users accessing ESPN video content using Roku devices: (1) Roku device serial numbers, and (2) video content selection.  *See, e.g.,* FAC ¶¶ 14, 45, 59.  He does not, and cannot, allege that WatchESPN disclosed any user's name, address, or any other personally identifying information.  Indeed, he does not, and cannot, even allege that WatchESPN possessed personally identifying information such that WatchESPN could have disclosed such information to Adobe.  In short, Plaintiff fails to state a claim under the VPPA because the alleged disclosures by WatchESPN include *only* Roku device serial numbers and video content, which do not "identify a person" as requesting or receiving specific video content and therefore do not constitute PII.

As the Senate Report explains, the VPPA prohibits disclosure of "information that identifies a *particular person* as having engaged in a specific transaction with a video tape service provider."  S. Rep. No. 100-599, at 12 (emphasis added).  Relying on this legislative history, courts have interpreted the VPPA as applying only to disclosures that "*identif[y] a specific person* and tie[] that person to particular videos that the person watched." *In re Hulu Privacy Litig.* ("*Hulu*"), No. C11-03764, 2014 WL 1724344, *8 (N.D. Cal. Apr. 28, 2014) (emphasis added); *see also id.* ("The Senate Report shows the legislature's concern with disclosures linked to *particular, identified individuals*.") (emphasis added); *Nickelodeon*, 2014 WL 3012873, at *10 (PII "is information that must link 'a *specific, identified person* and his video habits.'") (citing *Hulu*, 2014 WL 1724344, at *12, 14) (emphasis added).

In *Nickelodeon*, decided less than a month ago, the court rejected a VPPA claim based on alleged disclosures that "might one day serve as the basis of personal identification after some effort on the part of the recipient."  2014 WL 3012873, at *11.  The plaintiffs alleged that Viacom transmitted two key pieces of information to Google for data analytics purposes each

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 7
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

time a user viewed video content on a Viacom website: (1) the name of the video selection, and (2) a code identifying the user's age and sex.  *Id.* at *1.  The plaintiffs in *Nickelodeon* further alleged that, for each user, a Viacom cookie[2] collected and shared with Google a username, unique device identifier, the IP address of the user's computer, and video selections, among other information.  *Id.* at *1-2.  The *Nickelodeon* court found that, like the Roku device serial number at issue in this case, "[m]uch of this information" is "not even anonymized information about the Plaintiff himself; it is anonymized information about a computer used to access a Viacom site."  *Id*. at *10.  The court held that the alleged disclosures to Google did not constitute PII because they were "simply not information that, *without more*, identifies a person—an actual, specific human being—as having rented, streamed, or downloaded a given video."  *Id.* at *11 (emphasis added).

Earlier this year, the *Hulu* court rejected a similar VPPA claim based on the disclosure of a unique user identification number by Hulu to comScore, a data analytics company.  In *Hulu*, the plaintiff alleged that, for users viewing video content on Hulu's website, Hulu disclosed their unique Hulu IDs and video selections to comScore and created a public "profile page" that included the user's first and last name.  *Hulu*, 2014 WL 1724344, at *3.  Because the URLs for these profile pages were in a standard format and always included the user's Hulu ID number, and Hulu gave Hulu ID numbers to comScore, the plaintiff alleged that comScore "had the 'key' to locating users' associated profiles that revealed the names the users provided when they signed up for Hulu."  *Id.* at *4.  The court held that, even assuming that such "[a]nonymous disclosures . . . hypothetically could have been linked to video watching," that was "not enough to establish a VPPA violation."  *Id*. at *1, *12.

---

[2] As the *Nickelodeon* court explained, the so-called "cookies" were "text files" that Viacom placed on a user's computer "to acquire certain information" about the user.  *See* 2014 WL 3012873, at *1.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 8
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

*Nickelodeon* and *Hulu* are only the most recent in a long line of cases holding that anonymous unique identifiers, without more, are not PII.  In *Viacom Int'l Inc. v. YouTube, Inc.*, for example, the court compelled YouTube to produce its "logging database," which contained, for each video watched, the unique "login ID" of the user who watched it, the IP address of the user's computer, and the "identifier for the video."  253 F.R.D. 256, 261-62 (S.D.N.Y. 2008).  In doing so, the court rejected YouTube's argument that disclosing such information would expose it to liability under the VPPA because, as the court found, "the login ID is an anonymous pseudonym … which *without more* cannot identify specific individuals."  *Id.* at 262 (emphasis added) (internal quotation marks omitted).  Similarly, in *Pruitt v. Comcast Cable Holdings*, 100 F. App'x 713, 716 (10th Cir. 2004), the court held that a unique identifier for Comcast cable boxes, referred to as a "unit address," was not PII under the Cable Act, 47 U.S.C. § 551, *et seq.*, because "one cannot connect the unit address with a specific customer" without referring to Comcast's billing system.[3]  Because the alleged disclosures by WatchESPN to Adobe do not, without more, identify any particular person or link that person to specific ESPN video content, Plaintiff's VPPA claim fails as a matter of law.

### 2. Plaintiff's reliance on allegations regarding Roku and Adobe does not save his claim.

The Court need not consider Plaintiff's allegations regarding Roku and Adobe because Plaintiff's inability to identify any disclosure by WatchESPN that is itself, without more, PII is fatal to his VPPA claim.  As explained below, however, these allegations are legally irrelevant and inadequately pled.  Accordingly, even if the Court considers these allegations, they do not save Plaintiff's claim from dismissal.

---

[3] *See also, e.g., Johnson v. Microsoft Corp.*, No. C06-0900, 2009 WL 1794400, *4 (W.D. Wash. June 23, 2009) (holding that an IP address is not PII because it does not "identify a person," only a computer); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1021 (N.D. Cal. 2012) (rejecting privacy claims based on "allegations that third parties can potentially associate [unique LinkedIn usernames] with information obtained from cookies and can de-anonymize a user's identity" as "speculative"); *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 335-37 (E.D. Pa. 2012) (dismissing Health Insurance Portability and Accountability Act (HIPPA) claim by patients who alleged defendants sold confidential information; mere possibility that third party could identify patients' de-identified data insufficient).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 9
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

### (a) Allegations regarding Roku and Adobe are irrelevant to whether disclosures by WatchESPN constitute personally identifiable information.

In an attempt to overcome his failure to identify any disclosure of PII by WatchESPN, Plaintiff alleges, without any factual support, that Adobe uses Roku device serial numbers from WatchESPN "to personally identify users and associate their video viewing selections with a personalized profile in its database." *See* FAC ¶ 32; *see also id.* ¶¶ 45, 60. This allegation is premised on Plaintiff's equally conclusory allegation that Adobe "obtains demographic information from Roku itself." *Id.* ¶ 24. Because they do not concern any disclosure actually made by WatchESPN, these allegations are irrelevant to Plaintiff's VPPA claim.

In *Nickelodeon*, the court rejected exactly this type of liability theory in dismissing claims based on allegations of how Viacom's alleged disclosure of unique, anonymous device identifiers might be used "after some effort on the part of the recipient." 2014 WL 3012873, at *11. The *Nickelodeon* court dispelled any notion that VPPA liability can be based on the actions of the recipient of unique, anonymous device identifiers. *Id*; *see also Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 335-37 (E.D. Pa. 2012) (rejecting HIPPA claims based on "re-identification theory" of liability, holding that the "status of the information *disclosed by the defendants*… governed the viability of the plaintiffs' claims" (emphasis added)).

The *Hulu* court likewise rejected a VPPA claim premised on the alleged actions of the recipient of a challenged disclosure. The court held that Hulu IDs allegedly disclosed by Hulu to comScore were not PII, notwithstanding the plaintiff's contention that comScore "could easily" have used those unique identifiers to personally identify users through their public profile pages. *Hulu*, 2014 WL 1724344, at *4, 12. In contrast, the court held there was a material issue of fact as to whether Facebook IDs allegedly disclosed to Facebook were PII because a Facebook ID is created by Facebook for the purpose of identifying a user on Facebook's social network and, therefore, is "more than a unique, anonymous identifier." *Id.* at *14.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 10
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

As the *Nickelodeon* court emphasized in discussing *Hulu*, however, disclosure of a Facebook ID to Facebook—the party that created the unique identifier for the purpose of personally identifying users—is *sui generis*. *See* 2014 WL 3012873, at *12 ("Simply put, in a socially networked world a Facebook ID is at least arguably 'akin' to an actual name that serves without more to identify an actual person."). Unique, anonymous device identifiers do not, without more, personally identify users. Even Plaintiff implicitly acknowledges this fact by conjuring up allegations that Adobe uses Roku device serial numbers from WatchESPN to personally identify users for its own unidentified purpose. These allegations are not only irrelevant to showing that the alleged WatchESPN disclosures constitute PII, they are not supported by a single factual allegations that would support a reasonable inference that Adobe could use Roku device serial numbers to personally identify users, let alone that Adobe is actually engaged in such conduct.

### (b) Allegations regarding Roku and Adobe should be disregarded because they are speculative and conclusory.

Even if the Court were to consider Plaintiff's allegations regarding Roku and Adobe, Plaintiff fails to state a claim because these conclusory allegations are based on purported "evidence" that either does not support or expressly contradicts them.[4] As the Ninth Circuit has explained, courts "need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). *See also Sprewell*, 266 F.3d at 988; *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

---

[4] Because Plaintiff relies on these documents in the FAC, they are incorporated by reference therein and therefore may be considered on this motion to dismiss. *See Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000) (on Rule 12 Motion, court may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading") (citing *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 11
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

As discussed above, Plaintiff's theory of liability rests upon purported "evidence" which "suggests" that Adobe "obtains demographic information from Roku itself." FAC ¶ 24. For Plaintiff's theory of liability to make any sense, Roku would need to be providing information to Adobe that Adobe could use to match a user's identity with his or her Roku device serial number. None of the sources cited in the FAC comes close to supporting this unfounded and speculative claim.

*First*, Plaintiff cites Roku's Privacy Policy, which he characterizes as stating that Roku may share information with third parties that provide "analytics services." *Id.* ¶ 25. That policy, however, states that "Roku uses third parties (including contractors and service providers) to help with certain aspects of its operations, which may require disclosure of your information to them." *See* Heckenlively Decl., Ex. B. It does not state that Roku is sharing Roku device serial numbers with any third party, nor does it identify *Adobe* or any other data analytics company as the recipient of such information. In short, nothing in the Roku Privacy Policy supports the claim that Roku is sharing Roku device serial numbers, or any other information, with Adobe that Adobe could use to personally identify users.

*Second*, Plaintiff cites to an interview with Christopher Comstock, a senior project manager at Adobe, to allege that Adobe receives information from Roku.[5] *See* FAC ¶¶ 25-27, 31. While Plaintiff purports to quote Mr. Comstock to this effect, Mr. Comstock *did not say* that Adobe provides services to or receives information from Roku. *Id.* ¶ 27. A review of the full interview, which is incorporated by reference into the FAC, makes clear that Mr. Comstock was discussing a general phenomenon in the market leading him to *forecast* that the use of Internet-connected devices other than computers will increase in the coming years. Heckenlively Decl., Ex. C. According to Mr. Comstock, that increase *will lead to* a change in the nature of the work data analytics companies are asked to provide. *Id.* He identifies the Roku device as one example

---

[5] The FAC refers to "[c]omments from Adobe's senior employees," but Mr. Comstock is the only employee identified and his statements are the only ones upon which Plaintiff relies.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 12
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

of this type of device, and elsewhere in the interview also names Internet-connected televisions and Xbox game consoles. *Id.* Mr. Comstock's comments do not support Plaintiff's allegation that Roku is a client of Adobe, much less that Roku provides information to Adobe that would allow Adobe to match Roku device serial numbers with user identities.

Other comments by Mr. Comstock in the same interview contradict Plaintiff's theory of liability that Adobe creates "profiles" of specific individuals by using Roku device serial numbers and video selections from WatchESPN. Mr. Comstock refers to this task of "figuring out who may be the user across numerous devices" as "probabilistic matching." *Id.* But he goes on to say that *Adobe does not offer probabilistic matching technology*. If a *customer already is* using a probabilistic matching technology offered by other companies, Adobe allows the customer to continue using it, but, according to Mr. Comstock, Adobe does not have that capability. *Id.* ("We sit in an agnostic point of view in that we provide the tools that let customers choose what to do with their data."). In short, and not surprisingly, Plaintiff ignores the part of Mr. Comstock's interview where he states that Adobe does not engage in the very type of probabilistic matching that Plaintiff claims would allow Adobe to identify users based on Roku device serial numbers.

*Third*, Plaintiff cites to an image from "Adobe's marketing materials" depicting a pyramid describing the types, characteristics, and sources of customer data. FAC, Figure 3. According to Plaintiff, this pyramid "portrays the vast array of information that feeds into a consumer's digital profile in Adobe's databases using information transmitted from sources like Roku." *Id.* ¶ 29. This image is taken from a white paper for a marketing service offered by Adobe, called Adobe Campaign, that Plaintiff mischaracterizes and misuses in the FAC. Heckenlively Decl., Ex. D at 7. Plaintiff does not allege that ESPN uses Adobe Campaign, so these allegations are inapposite. Moreover, Plaintiff's description of the pyramid as portraying information that "feeds into" Adobe's databases from third parties, like Roku, is wrong. The pyramid identifies information that customers *already possess*, such as names, addresses, and

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 13
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

phones number, which Adobe Campaign helps them leverage for targeted marketing campaigns. *Id* at 1-2.  As the white paper explains, Adobe Campaign is designed to help companies "access data that *already exists* internally" by "aggregat[ing] customer data from different systems and mak[ing] it centrally available" and "actionable."  *Id.* at 1 (emphasis added).  Thus, Adobe Campaign does not use, combine, or provide access to information from *third parties*.  It facilitates the effective use of information that Adobe Campaign customers already possess. Finally, even if Plaintiff had alleged that ESPN uses Adobe Campaign, he does not allege that ESPN possesses information personally identifying users that could be shared with Adobe.

*Fourth*, Plaintiff cites to Adobe's privacy policy for its analytics services as further "evidence" that Adobe combines information from different clients to personally identify users. Again, that document flatly contradicts Plaintiff's theory.  "Adobe does not use the information we collect for a company except as may be allowed in a contract with that company," which "is usually limited to providing our services to the company," and even in those instances where Adobe may share information between companies, it is "'aggregated' information" that "*is anonymous and does not identify individuals*."  Heckenlively Decl., Ex. A (emphasis added).

Plaintiff's allegations that Adobe combines Roku device serial numbers from WatchESPN with demographic information from Roku to personally identify users should be disregarded because Plaintiff does not allege any facts supporting them, and the facts that are alleged and incorporated by reference in the FAC flatly contradict those allegations.  All that remains are "mere conclusory statements," which the Court need not accept as true.  *Iqbal*, 556 U.S. at 678-79 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."); *Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  In *Nickelodeon*, the court followed *Iqbal* in refusing to consider the plaintiffs' conclusory allegation that Viacom and Google "were able to identify specific individuals" by connecting "online activity and

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 14
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

information" with "offline activity and information." 2014 WL 3012873, at *2 n.3. Because those statements were "entirely conclusory" and supported by "no facts . . . which indicate when or how either Defendant linked the online information it collected with extra-digital information about the Plaintiffs," the court declined to "credit the allegations." *Id.* The Court should do the same here.

**B.  Plaintiff fails to state a VPPA claim because he is not a "consumer" under the VPPA.**

Even if Plaintiff could allege that WatchESPN disclosed PII, which he cannot, his claim should be dismissed because he is not a "consumer" within the meaning of the VPPA. The VPPA prohibits the knowing disclosure of "personally identifying information concerning any *consumer*" of a video tape service provider. 18 U.S.C. § 2710(b)(1) (emphasis added). A "consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video tape service provider." *Id.*, § 2710(a)(1). Plaintiff alleges that he was a "subscriber" because he "downloaded, installed, and watched videos using the Watch ESPN Channel," and that he is a "renter" because ESPN "grants him a temporary license to access and view specific videos in exchange for" viewing advertisements. FAC ¶ 56. His allegations do not support either conclusion.

Because the VPPA does not define "subscriber" or "renter," these terms are "interpreted in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91 (2006) (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)). Merriam-Webster's Dictionary defines the verb "to subscribe" as "to enter one's *name* for a publication or service" or "to receive a periodical service *regularly* on order."[6] Plaintiff does not allege that he provided his name or any other information to WatchESPN or that he viewed content regularly on WatchESPN. Instead, he alleges that he downloaded WatchESPN from the Roku channel store and watched "numerous" clips using his Roku device. In *Hulu*, the court concluded that Hulu

---

[6] *Available at* http://www.merriam-webster.com/dictionary/subscribe (emphasis added).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 15
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

users were subscribers, in part because their "individual Hulu profile pages . . . included name, location preference information designated by the user as private, and Hulu username," all of which Hulu gave to comScore. *In re Hulu Privacy Litig.*, No. 11-03764, 2012 WL 3282960, *8 (N.D. Cal. Aug. 10, 2012). Here, by contrast, there is no allegation that ESPN knew the identity of Plaintiff or any other WatchESPN user.

As for the allegation that Plaintiff was a "renter," Merriam-Webster defines the verb "to rent" as "to take and hold under an agreement to *pay* rent," and the noun as "the amount *paid* by a hirer of personal property to the owner for the use thereof."[7] There is no allegation that Plaintiff paid any money to ESPN to use WatchESPN, and therefore no basis for his claim that he is a renter. His allegation that he viewed advertisements as an apparent substitute for payment does not change this result. In *Hulu,* the court held that "the terms 'renter' and 'buyer' necessarily imply payment of money." *Hulu*, 2012 WL 3282960, at *8. Because Plaintiff's allegations do not show that he is either a "subscriber" or a "renter" under the VPPA, he is not a "consumer" and therefore cannot state a VPPA claim.

## IV.   CONCLUSION

For the reasons set forth above, Plaintiff's First Amended Complaint should be dismissed with prejudice.

---

[7] *Available at* http://www.merriam-webster.com/dictionary/rent (emphasis added).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 16
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

DATED this 31st day of July, 2014.

       MUNGER TOLLES & OLSON LLP

       *s/ Glenn D. Pomerantz*
       Glenn D. Pomerantz
       Email: glenn.pomerantz@mto.com
       355 South Grand Avenue
       Thirty-Fifth Floor
       Los Angeles, CA 90071
       Telephone: 213-683-9100

       Rosemarie T. Ring
       Email: rose.ring@mto.com
       Jonathan H. Blavin
       Email: jonathan.blavin@mto.com
       Bryan H. Heckenlively
       Email: bryan.heckenlively@mto.com
       560 Mission Street
       Twenty-Seventh Floor
       San Francisco, CA 94105
       Telephone : 415-512-4000

       *Admitted Pro Hac Vice*


       CAIRNCROSS & HEMPELMANN, P.S.

       *s/ J. Thomas Richardson*
       J. Thomas Richardson
       Email: trichardson@cairncross.com
       Ana-Maria Popp
       Email: apopp@cairncross.com
       Cairncross & Hempelmann, PS
       524 Second Avenue, Suite 500
       Seattle, WA 98104-2323
       Telephone: 206-587-0700

       Counsel for ESPN, Inc.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT - 17
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

**Certificate of Service**

I, Bryan H. Heckenlively, certify under penalty of perjury that on July 31, 2014, I electronically filed this document entitled Defendant's Motion to Dismiss Plaintiff's First Amended Complaint using the CM/ECF system which will send notification of such filing to the following persons:

Clifford A. Cantor
627 208th Avenue SE
Sammamish, WA  98074
Cliff.cantor@outlook.com
*Counsel to Plaintiff*

Jay Edelson
Rafey S. Balabanian
Benjamin H. Richman
J. Dominick Larry
Edelson PC
350 North LaSalle Street
Suite 1300
Chicago, IL  60654
jedelson@edelson.com
rbalabanian@edelson.com
brichman@edelson.com
nlarry@edelson.com
*Counsel to Plaintiff*

DATED this 31st day of July, 2014, at San Francisco, California.

*s/ Bryan H. Heckenlively*
Bryan H. Heckenlively
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA 94105
Telephone : 415-512-4000
E-mail: bryan.heckenlively@mto.com

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 18
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308