1

2

Honorable Thomas S. Zilly

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

CHAD EICHENBERGER, individually and on
behalf of all others similarly situated,

11

Case No.: 2:14-cv-00463

**PLAINTIFF'S RESPONSE IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**

12

*Plaintiff*,

13

*v.*

14

ESPN, INC., a Delaware corporation,

15

*Defendant*.

16

17

18

19

20

21

22

23

24

25

26

27

**EDELSON PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370  •  Fax: 312.589.6378

## TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................... 1

**BACKGROUND** ..................................................................................................... 3

**ARGUMENT** ........................................................................................................... 3

    **I.**      **Eichenberger Adequately Alleges that ESPN's Disclosure of His PII to Adobe Identified Him as Viewing Specific Video Materials** ............................ 4

            A.    The VPPA's definition of PII is broad, and the context-based, case-by-case analysis it requires supports the conclusion that Eichenberger's Roku serial number and video viewing history are PII.............................. 4

            B.    The Context of ESPN's Disclosures: Eichenberger Alleges Sufficient Facts to Show that the Roku Serial Number and Video Viewing History Disclosed by ESPN is PII in This Case ....................................... 7

            C.    ESPN's Cited Authorities do not Require a Finding that its Disclosures Were not PII .......................................................................... 11

    **II.**     **Eichenberger Falls Within the VPPA's Definition of a "Consumer" Because He Downloaded, Installed, and Watched Video Content through the ESPN Channel on His Roku Device** ......................................................... 15

            A.    As an ESPN Channel Subscriber, the VPPA Applies to Eichenberger ................................................................................. 15

            B.    Because ESPN Provided Eichenberger a Temporary License to Access and View Videos in Exchange for Being Exposed to Advertisements, He is Also a "Renter" of Those Videos .................................................... 17

**CONCLUSION** ..................................................................................................... 18

**EDELSON PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

# TABLE OF AUTHORITIES

**United States Supreme Court Cases:**

*Asgrow Seed Co. v. Winterboer*, 513 U.S. 179 (1995) ............................................................ 15, 17

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007) ................................................................ 4

*Erickson v. Pardus*, 551 U.S. 89 (2007) .................................................................................. 4

**United States Circuit Court of Appeals Cases:**

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940 (9th Cir. 2005)................. 3, 12

*Pruitt v. Comcast Cable Holdings, LLC*, 100 Fed. Appx. 713 (10th Cir. 2004) ..................... 8, 14

**United States District Court Cases:**

*In re Hulu Privacy Litig.,*
   No. 11-cv-3764, 2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) ............................... 16, 17

*In re Hulu Privacy Litig.,*
   No. 11-cv-3764, 2014 WL 1724344 (N.D. Cal. Apr. 28, 2014)........................... 5, 6, 7, 8

*In re Nickelodeon Consumer Privacy Litig.,*
   MDL No. 2443, 2014 WL 3012873 (D. N.J. July 2, 2014)................................ 11, 12, 13

*Johnson v. Microsoft Corp.,*
   No. 06-cv-0900, 2009 WL 1794400 (W.D. Wash. June 23, 2009) ............................... 15

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) ............................................. 15

*Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331 (E.D. Pa. 2012) ................................ 15

*Sweet v. Hinzman*, 634 F. Supp. 2d 1196 (W.D. Wash. 2008) ........................................... *passim*

*Viacom Int'l Inc. v. YouTube, Inc.*, 253 F.R.D. 256 (S.D.N.Y. 2008) ........................................ 14

**Statutes:**

18 U.S.C. § 2710 .............................................................................................................. 1, 5, 15

**Miscellaneous:**

Adobe *Partner Finder*
   http://solutionpartners.adobe.com/home/partnerFinder.html............................................ 10

Arvind Narayanan & Vitaly Shmatikov,
   *Myths and Fallacies of "Personally Identifiable Information"*
   53 Comms. of the ACM (2010) ..................................................................................... 6

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS
(No. 2:14-cv-00463)

- ii -

**EDELSON PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

Arvind Narayanan & Vitaly Shmatikov,
 *Robust De-Anonymization of Large Sparse Datasets*,
 29 Procs. of the 2008 IEEE Symp. on Security & Privacy 111 (2008) ............................. 6

Black's Law Dictionary (3rd Pocket Ed. 2006) .......................................................... 17

*Data Brokers: A Call for Transparency and Accountability* (May 2014)
 http://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-
 accountability-report-federal-trade-commission-may-
 2014/140527databrokerreport.pdf ........................................................................ 6

Encyclopedia.com, *Subscribe*
 http://www.encyclopedia.com/topic/subscribe.aspx ................................................... 16

FindMe Words, *Subscribing*
 http://www.findmewords.com/definition-of-subscribing.html ...................................... 16

National Institute of Standards and Technology, *Guide to Protecting the Confidentiality of
 Personally Identifiable Information (PII)*, Special Publication 800-122 ......................... 6

Oxford Dictionaries *Rent*
 http://www.oxforddictionaries.com/us/definition/american_english/rent?q=rent ........... 17

Oxford Dictionaries, *Subscribe*
 http://www.oxforddictionaries.com/definition/english/subscribe .................................. 16

S. Rep. No. 100-599 (1988) ................................................................................ 5, 16

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

## **INTRODUCTION**

In addition to being the "worldwide leader in sports" and operating its vast cable television network, Defendant ESPN, Inc. ("ESPN") allows consumers to access its sports content on their computers (through its website), mobile devices (through its mobile application), and televisions, through content streaming devices. On the content streaming device Roku, ESPN offers a "channel," known as WatchESPN ("WatchESPN" or the "Channel"), through which a consumer can view sports news, reports and other video media on his or her television.

Unbeknownst to users of WatchESPN, however, each time they view videos on the Channel, ESPN discloses their personally identifiable information (or "PII") in the form of their Roku serial numbers (unique numbers associated with their specific Roku devices) and video viewing histories to data analytics giant Adobe Systems, Inc. ("Adobe"). When disclosed to Adobe—a company that specializes in gathering information that allows it to analyze the habits of and target specific consumers for advertising and the like—this information identifies specific individuals as having viewed specific videos.

Plaintiff Chad Eichenberger ("Eichenberger") is one such consumer who subscribed to the Channel and whose unique Roku serial number and video viewing history ESPN disclosed to Adobe without authorization. In response, he filed the instant action and later, his First Amended Complaint ("Complaint"), on behalf of himself and all other subscribers to WatchESPN, alleging that ESPN violated the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), which expressly prohibits such disclosures of PII. ESPN now seeks dismissal of the case for two primary reasons.

First, ESPN argues that Eichenberger fails to state a claim because the Roku serial numbers it admittedly disclosed to Adobe do not *alone* identify specific individuals and therefore, do not constitute PII. (Presumably this means that ESPN believes the disclosure of something like a consumer's actual name is necessary to constitute a violation of the statute, but that's not made clear in its motion.) Failing that, it argues that even if the serial numbers could be considered PII in the appropriate context, Eichenberger has not made allegations sufficient to

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS                           - 1 -
(No. 2:14-cv-00463)

**EDELSON PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370  •  Fax: 312.589.6378

suggest that such a context exists here. ESPN is mistaken on a number of levels.

For one, Congress and the courts have been clear that the term "personally identifying information" should be construed broadly to include information well beyond things like names and physical addresses, and that the analysis of what constitutes PII is contextual and requires case-by-case consideration of the circumstances of the alleged disclosure (e.g., whether the information disclosed is combined with other data to identify an individual). Thus, the question here is not whether the Roku serial number *alone* identifies a specific individual, but whether in the context of its disclosure to Adobe it does.

Moreover, Congress, the courts, government agencies and leading privacy researchers all agree that unique device identifiers, like the Roku serial numbers disclosed by ESPN here, can and are often used to identify specific individuals. Thus, because Eichenberger details in his Complaint how, as part of its business, Adobe links Roku serial numbers with, for example, identities, location information, and demographic details, to identify and track consumers across multiple devices and platforms, he has pleaded more than enough to state a claim for ESPN's violations of the VPPA. That is especially true given that at this stage of the proceedings those allegations must be accepted as true and all reasonable inferences must be drawn in Eichenberger's favor.

Second, ESPN argues that Eichenberger is neither a "subscriber" of the WatchESPN Channel nor a "renter" of its video materials, and therefore is not a "consumer" protected by the VPPA. Each of these arguments fails as well. Under the relevant authority and common usage of the term, Eichenberger sufficiently alleges that he was a "subscriber" of WatchESPN because he downloaded, installed, and used it to watch videos on his Roku device. Further, he has sufficiently alleged that he was a "renter" inasmuch as he provided valuable consideration to ESPN—in the form of his exposure to advertisements that resulted in ESPN receiving additional revenue—in exchange for a temporary license to watch videos through the Channel.

For these reasons and as explained further below, the Court should deny ESPN's motion in its entirety and allow Eichenberger's claim to proceed.

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS                - 2 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

### BACKGROUND

ESPN, best known for its cable television channel of the same name, also offers the WatchESPN Channel for use on Roku streaming devices. (Compl. ¶ 1.) Through WatchESPN consumers can view "sports-related events [and] news, and ESPN's own proprietary entertainment programming." (*Id.* ¶ 13.) Relevant here, users of the WatchESPN Channel are not required to consent to the disclosure of their PII nor do they provide such consent. (*Id.* ¶ 12.) Nevertheless, each time a consumer watched a video on WatchESPN, ESPN disclosed such information to Adobe. (*Id.* ¶ 14.)

As part of its business, Adobe "collects an enormous amount of information about a given consumer's online behavior (as well as unique identifiers associated with a user's devices) from a variety of sources." (*Id.* ¶ 22.) This allows Adobe to "provide insights into the behaviors and demographics of WatchESPN's user base." (*Id.* ¶ 21.) To create profiles identifying specific consumers, Adobe uses "behavioral data and unique identifiers, often supplied by hardware manufacturers." (*Id.* ¶ 16.)

The records ESPN disclosed to Adobe included the title of each video the user watched, as well as the user's unique Roku serial number. (*Id.* ¶ 45.) Eichenberger alleges that based on the massive stores of information Adobe possesses about individual consumers, the Roku serial numbers received by Adobe allowed it to identify specific users and associate them with specific video viewing histories. (*Id.* ¶¶ 45, 59, 60.)

For his part, Eichenberger downloaded and used WatchESPN to "watch sports-related events and news." (*Id.* ¶ 42.) He never granted ESPN permission to disclose his PII to anyone. (*Id.* ¶¶ 12, 43, 44, 63.) But each time he viewed content on WatchESPN, ESPN disclosed his PII (in the form of his video viewing history and Roku serial number) to Adobe. (*Id.* ¶¶ 14, 45, 60.)

### ARGUMENT

"When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the non-moving party." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir. 2005). "The court must

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS                    - 3 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370  •  Fax: 312.589.6378

accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff." *Sweet v. Hinzman*, 634 F. Supp. 2d 1196, 1200 (W.D. Wash. 2008). To survive such a motion, a complaint need not plead "[s]pecific facts," but instead, must contain a statement of the claim that "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

I.    **Eichenberger Adequately Alleges that ESPN's Disclosure of His PII to Adobe Identified Him as Viewing Specific Video Materials.**

ESPN asserts two challenges to Eichenberger's claim that the information disclosed by ESPN falls within the VPPA's definition of PII. First, it argues that the Roku device serial numbers cannot be used to identify individuals under any set of circumstances. And second, it contends that even if a Roku serial number could act as such an identifier, Eichenberger has failed to plead facts showing that is the case here. ESPN is mistaken on both fronts for several reasons.

As an initial matter, Congress, the courts, and government agencies such as the Federal Trade Commission ("FTC") have all been clear that "personally identifying information" includes much more than consumers' actual names and physical addresses. Instead, PII can be any type of information that, within a given context, serves to actually identify a specific individual. (*See* Section I.A, *infra*.) Second, Eichenberger's Complaint alleges facts sufficient to show that the information disclosed by ESPN to Adobe identified him as having viewed specific video materials. (*See* Section II.B, *infra*.) And third, none of the authorities relied on by ESPN change the result. (*See* Section II.C, *infra*.) Accordingly, ESPN's motion should be denied and Eichenberger should be allowed to proceed with his claim.

A.    The VPPA's definition of PII is broad, and the context-based, case-by-case analysis it requires supports the conclusion that Eichenberger's Roku serial number and video viewing history are PII.

The VPPA defines "personally identifiable information" as "*includ[ing]* information which identifies a person as having requested or obtained specific video materials or services

from a video tape service provider." 18 U.S.C. § 2710(a)(3) (emphasis added). That definition does not limit PII to traditional methods of identification like names and addresses, but instead, "plainly encompasses other means of identifying a person." *In re Hulu Privacy Litig.*, No. 11-cv-3764, 2014 WL 1724344, at **7, 11 (N.D. Cal. Apr. 28, 2014) ("*Hulu*"). Nevertheless, ESPN argues that the "machine serial number" and video viewing histories it disclosed in this case are not PII and thus, does not fall within the purview of the VPPA. (Motion to Dismiss ("MTD") at 8–9.) ESPN is wrong.

One court in the Northern District of California recently and comprehensively analyzed the meaning of "personally identifiable information" under the VPPA and found that the statutory language, legislative history, and case law confirm that a video viewing history tied to a unique identifier—like a Roku serial number—could constitute PII. *See Hulu*, 2014 WL 1724344 at *13. The *Hulu* court began by recognizing that the VPPA does not expressly address whether unique user IDs constitute PII. *See id.* at *7. Thus, it turned to the legislative history to determine Congress' intent in enacting the VPPA, which simply put, was "[t]o preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Id.* at *8 (citing S. Rep. No. 100-599, at 2 (1988)). As Senator Patrick Leahy explained,

> It is nobody's business what Oliver North or Robert Bork or Griffin Bell or Pat Leahy watch on television or read . . . In an era of interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers, it would be relatively easy at some point to give a profile of a person and tell what they buy in a store, what kind of food they like, what sort of television programs they watch . . . . I think that is wrong . . . and I think it is something that we have to guard against.

S. Rep. No. 100-599, at 5–6.

The *Hulu* court also noted that the Senate Report includes a section-by-section analysis of the VPPA, explaining that, "[u]nlike the other definitions in this subsection, [the definition of the term 'personally identifiable information'] uses the word 'includes' to establish a minimum, but not exclusive, definition of personally identifiable information." *Hulu*, 2014 WL 1724344 at *11. In that light, the court concluded that the VPPA does not limit identification of individuals merely to traditional methods like "a name necessarily." *Id.* ("One can be identified in many

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS
(No. 2:14-cv-00463)

- 5 -

**Edelson PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1   ways: by a picture, by pointing, by an employee number, by the station or office or cubicle where

2   one works, by telling someone what 'that person' rented."). Instead, "the statute, the legislative

3   history, and the case law . . . require the identification of a specific person tied to a specific

4   transaction, and support the conclusion that [although] a unique anonymized ID alone is not

5   PII . . . *context could render it not anonymous and the equivalent of the identification of a*

6   *specific person.*" *Id.* (emphasis added).

7       The *Hulu* court's analysis is consistent with findings by several government agencies and

8   leading academics. By way of example, according to the National Institute of Standards and

9   Technology ("NIST"), "PII is any information about an individual maintained by an agency,

10  including (1) any information that can be used to distinguish or trace an individual's

11  identity…and (2) any other information that is linked or linkable to an individual[.]" *Guide to*

12  *Protecting the Confidentiality of Personally Identifiable Information (PII)*, Special Publication

13  800-122. In reaching that conclusion, NIST identified two particularly relevant examples of PII:

14  "Asset information, such as Internet Protocol (IP) addresses...or other *host-specific persistent*

15  *static identifier that consistently links to a particular person* or small, well-defined group of

16  people[,]" like the Roku serial numbers ESPN disclosed to Adobe here.[1]

17      Perhaps of equal importance is the FTC's guidance on the issue. The FTC has concluded

18  that it makes no difference whether the steward of data (like Adobe here) breaks up PII and

19  stores it in separate repositories—its recent study of the industry made this point in response to

20  data brokers' claims that they didn't maintain "profiles" on consumers. *See Data Brokers: A Call*

21  *for Transparency and Accountability* (May 2014), available at

22

23  [1]     The *Hulu* court's analysis is also consistent with that of renowned privacy scholars Arvind Narayanan and

24  Vitaly Shmatikov, who have concluded that, "[w]hile some attributes may be uniquely identifying on their own, any
    attribute can be identifying in combination with others." *See* Arvind Narayanan & Vitaly Shmatikov, Myths and

25  Fallacies of "Personally Identifiable Information," 53 Comms. of the ACM 24, 26 (2010). Notably, the researchers
    have reduced their theories to practice, demonstrating how seemingly unassigned personal attributes in a dataset

26  may be combined with other sources to identify a specific person. *See* Arvind Narayanan & Vitaly Shmatikov,
    Robust De-Anonymization of Large Sparse Datasets, 29 Procs. of the 2008 IEEE Symp. on Security & Privacy 111

27  (2008).

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

http://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf, p. 22. The agency's investigation revealed that rather than storing the data in one location, the brokers organized information by "events," and performed queries to generate on-the-fly profiles on a person. *Id.* Others substituted real names for unique identifiers. *Id.* at n.56. In either case, the data is PII. This is the reality of modern computing and data analytics.

Accordingly, where, as here, a video service provider (like ESPN) discloses a unique identifier (like a Roku serial number) and video viewing history to a third party (like Adobe), which actually uses that information to identify specific individuals and the video materials they viewed, the information disclosed is PII. *Hulu* at *11 ("One could not skirt liability under the VPPA, for example, by disclosing a unique identifier and a correlated look-up table.").[2]

B.   The Context of ESPN's Disclosures: Eichenberger Alleges Sufficient Facts to Show that the Roku Serial Number and Video Viewing History Disclosed by ESPN is PII in this Case.

Turning to the context of the disclosures in this case, ESPN argues that Eichenberger's allegations "do not concern any disclosure actually made by WatchESPN" that would identify him, and therefore "these allegations are irrelevant to Plaintiff's VPPA case." (MTD at 10.) That argument, however, ignores the Complaint's plain language, where Eichenberger alleges that the information disclosed *by ESPN* (i.e., his unique Roku serial number) identified *him* to Adobe as having viewed specific video materials. (Compl. ¶¶ 14, 45, 57 – 61.)

_____

[2]     Importantly, the *Hulu* decision was on summary judgment, where the plaintiffs were no longer entitled to the presumption that their allegations were correct and instead were required to produce evidence that the disclosures at issue identified them specifically. It was for this reason—a lack of evidence that a unique identifier had actually been tied to them specifically—that the *Hulu* Court ultimately granted summary judgment as to two types of disclosures made. *See Hulu*, 2014 WL 1724344, at *12–13. Here, by contrast, Eichenberger's allegations that Adobe actually identified him and the other Class members, (Compl. ¶¶ 14, 45, 57 – 61), must be taken as true, and can also be plausibly inferred from the nature of Adobe's business (i.e., identifying specific consumers using persistent identifiers such as Roku serial numbers. (*See id.* ¶¶ 3, 14–17, 19, 21–32); *see also Sweet*, 634 F. Supp. 2d at 1200.

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS          - 7 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

From there, Eichenberger details how—given Adobe's existing wealth of data about him and the other Class members—the disclosures identified him as having viewed specific materials, and "allowed Adobe to . . . attribute his viewing choices to his profile." (*Id.* ¶ 60; *see also id.* ¶¶ 21 – 32, 45.) What ESPN is alleged to have essentially done, then, is "disclose a unique identifier" (his Roku serial number) to a third-party (Adobe) that already possessed a "correlated look-up table." *Hulu*, 2014 WL 1724344, at *11. Given the context of the disclosures at issue—that they were made to Adobe, which possesses troves of information on individual consumers, including information obtained from Roku devices—the Roku serial numbers disclosed were "not anonymous and [were] the equivalent of the identification of a specific person." *Id.* (explaining that *Pruitt v. Comcast Cable Holdings, LLC*, 100 Fed. Appx. 713 (10th Cir. 2004) "suggests that if an anonymous, unique ID were disclosed to a person who could understand it, that might constitute PII."). As such, ESPN's disclosures identified Eichenberger as having watched specific video materials, and constituted disclosures of PII under the VPPA.

ESPN attempts to dispute these facts by attacking the allegations and asking the Court to draw inferences in its favor. ESPN asserts that "[f]or Plaintiff's theory of liability to make any sense, Roku would need to be providing information to Adobe that Adobe could use to match a user's identity with his or her Roku device serial number." (MTD at 12.) But that argument is fundamentally flawed. It seems to assume that to be identifying, a disclosure must be tied to an actual name and address. As the *Hulu* court noted, however, "[t]hat position paints too bright a line." *Hulu*, 2014 WL 1724344, at *11. "The statute does not require a name." *Id.* Instead, Eichenberger need only allege that the disclosure involves the "identification of a specific person tied to a specific transaction," which, as explained above, he does. Furthermore, even if Eichenberger's theory *did* require that his viewing history be tied to his real-world identity, there is no reason that Roku itself would have to provide the information allowing such a correlation to be made. The information could come from other Roku channels, other data analytics or data mining companies, or even from the consumer himself in other transactions with Adobe.

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS
(No. 2:14-cv-00463)

- 8 -

**EDELSON PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1    ESPN then goes on to attack Eichenberger's factual bases for asserting that the

2    disclosures here were identifying. First, it cherry picks from the allegations in the Complaint, and

3    latches on to Eichenberger's reference to the Roku privacy policy, asserting that nothing therein

4    establishes that Roku shares demographic information with Adobe. (MTD at 12.) This

5    misunderstands the Complaint. Eichenberger cites the privacy policy not to establish that Roku

6    itself disclosed serial numbers to Adobe, but rather, to establish that Roku itself considers serial

7    numbers to be personally identifying, (Compl. ¶ 18), which is not surprising, given that (as

8    explained above) relevant government agencies, academics and the data analytics industry all

9    agree that such data can be used to identify specific individuals. (*See* Section I.A, *supra*.)

10    Second, ESPN takes issue with Eichenberger quoting Christopher Comstock, a senior

11    project manager at Adobe, explaining how the company creates profiles on individual

12    consumers' online behaviors using unique identifiers from devices like the Roku. (MTD at 12–

13    13.) To make its point, ESPN sidesteps much of the article in which Mr. Comstock's quotes

14    appear, but selects a few statements that it believes cast doubt on Eichenberger's allegations that

15    Adobe is capable of using Roku serial numbers and additional PII to profile consumers. (*Id.*) But

16    what's critical amid ESPN's self-serving assessment of Mr. Comstock's comments is that ESPN

17    doesn't deny, nor could it, that Adobe can and is creating consumer profiles using, *inter alia*,

18    unique device IDs—it argues only that certain *interpretations* of those statements *suggest* that

19    Adobe *might* not be doing so.[3] Notwithstanding ESPN's arguments, Mr. Comstock casts any

20    doubt aside with his statement—which ESPN does not address—that Adobe has been collecting

21    "key assets and data . . . over the years" and is looking to "take advantage" of them in the context

22    of creating consumer profiles and providing more robust and targeted advertising solutions for its

23

---

24    [3]    ESPN argues that Mr. Comstock's statements suggest that Adobe is looking to take some action in the
       future, but is not currently conducting its business in the ways Eichenberger alleges. (MTD at 12–13.) But, by way

25    of example, Mr. Comstock's statement that "Mobile is the current trend but as we add Internet-connected TVs, Roku
       devices…" could also be interpreted to mean that Adobe is currently adding (or already has added) "Roku devices"

26    to the mix of platforms from which it collects consumer data. At worst, it's unclear, in which case the inference must
       be drawn in Eichenberger's favor. *See Sweet*, 634 F. Supp. 2d at 1200.

27

Plaintiff's Resp. in Opp.
to R. 12(b)(6) Mot. to Dismiss
(No. 2:14-cv-00463)                    - 9 -

**Edelson PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

customers. (*See* Dkt. 31-4 at 3.) Of course, that's consistent with Eichenberger's allegations that upon receipt of his Roku serial number and video viewing history from ESPN, Adobe was able to combine that data with other information it already possessed to specifically identify him.

Third, and similar to its arguments regarding Mr. Comstock's statements, ESPN argues that Eichenberger's Complaint misinterprets a figure from Adobe's marketing materials related to the "depth of information captured by Adobe's data analytics services." (Compl. ¶ 30; *see also* MTD at 13–14.) As ESPN points out, the figure comes from a white paper promoting Adobe's "Adobe Campaign" advertising service through which it helps companies "access data that already exists internally" by "aggregating customer data from different systems and mak[ing] it centrally available." (Dkt. 31-5 at 2.) However, it does not follow (as ESPN contends) that ESPN would have to be a customer of the Adobe Campaign service in order for Adobe to leverage the sorts of data described in the white paper to identify specific consumers using, *inter alia*, their Roku serial numbers. Instead, the key takeaway from the white paper (and consistent with Eichenberger's allegations) is that Adobe has access to that information, gathered from dozens of its clients[4]—whether ESPN is one such client or not—and its public representations suggest that it uses such information to identify specific consumers. But again, to the extent the white paper is open to interpretation, all reasonable inferences must be drawn in Eichenberger's favor at this point. *See Sweet*, 634 F. Supp. 2d at 1200.

Fourth, ESPN challenges Eichenberger's interpretation of the Adobe Analytics Privacy Policy. (MTD at 14.) In that regard, Eichenberger alleges that the Privacy Policy shows that Adobe does receive identifying information (including email addresses, account information, or Facebook profile information) from its clients, supporting the inference that Adobe's customer profiles do identify individuals. (Compl. ¶ 28); *see also Sweet*, 634 F. Supp. 2d at 1200 ("The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff."). ESPN points out that the Privacy Policy states that "'Adobe does not use the

---

[4] *See* http://solutionpartners.adobe.com/home/partnerFinder.html.

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS
(No. 2:14-cv-00463)

\- 10 -

Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

information we collect for a company except as may be allowed in a contract with that company,' which 'is usually limited to providing [] services to the company,'" and that the only information shared between companies is "'anonymous and does not identify individuals.'" (MTD at 14.) From this, ESPN surmises, it is impossible that Adobe could have combined client data and itself identified consumers. (*Id.*) ESPN's challenge ignores the word "usually" in the Privacy Policy, as well as the fact that even if Adobe only shared anonymous information *among companies*, it would still have access to that combined information in identifying form, before anonymizing it. As such, a factual dispute exists regarding the implications of the Adobe Privacy Policy, and ESPN's argument only serves to illustrate why dismissal on the pleadings, without discovery, would be inappropriate. *See Sweet*, 634 F. Supp. 2d at 1200 (noting that on a Rule 12(b)(6) motion, the Court must "draw all reasonable inferences in favor of the plaintiff.").

At this stage, Eichenberger has alleged sufficient facts to show that Adobe received, by ESPN's disclosures, information that "personally identified" him as having viewed specific video materials, and nothing more need be pleaded.

      C.    <u>ESPN's Cited Authorities do not Require a Finding that its Disclosures Were not PII.</u>

None of ESPN's cited authorities require a different result, nor are they sufficient to overcome the Rule 12(b)(6) standards, which require Eichenberger's allegations to be accepted as true and all reasonable inferences to be drawn in his favor.

Not surprisingly, ESPN relies heavily on *In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443, 2014 WL 3012873, *10 (D. N.J. July 2, 2014) ("*Nickelodeon*"), a recent case from the District of New Jersey. On ESPN's reading, *Nickelodeon* dictates that information is only PII if it is an actual name or some close surrogate. (MTD at 7–8.) In that case, the plaintiffs brought VPPA claims alleging that the defendant had disclosed their online usernames, IP addresses, and device identifiers to a third party. *In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443, 2014 WL 3012873 (N.D.N.J. July 2, 2014). In its discussion, the *Nickelodeon* court began by examining the statute's language, as well as the *Hulu* decision, and acknowledged

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS
(No. 2:14-cv-00463)

- 11 -

**EDELSON PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

that "'a person' can be identified by more than just their name and address," *id.* at *19, including "by a picture, by pointing, by an employee number, by the station or office or cubicle where one works . . . ." *Id.* (quoting *Hulu*, 2014 WL 1724344, at *11). Relying on the *Hulu* decision, the *Nickelodeon* court concluded that in order to constitute PII under the statute, "information … must, without more, itself link an actual person with actual video materials." *See id.* ("This is a cogent and reasonable reading of the statute, which on its face establishes that PII is 'information' that itself must both 'identif[y] a person' and further identify that 'person' in connection with 'specific video materials or services' 'requested or obtained' from a VTSP.")

While the *Nickelodeon* Court recognized that electronic identifiers could, with context, serve to identify specific individuals in a manner "akin to" a name, it nevertheless found that the plaintiffs in that case had failed to plead any contextual facts sufficient to support such a conclusion. *Id.* at *20–22. Ultimately, the *Nickelodeon* court applied the *Hulu* analysis, and found that due to a lack of allegations concerning context in which the information was disclosed, the plaintiffs had only alleged disclosure of the "type of information that *might one day* serve as the basis of personal identification after some effort on the part of the recipient," and therefore failed to state a claim. *Id.* at *22 (emphasis added).

Here, by contrast, Eichenberger does not allege that Adobe "might one day" use the information disclosed to identify him; rather, he alleges that because of Adobe's existing stores of data, the information ESPN disclosed *did* identify him at the time it was disclosed. (Compl. ¶ 14, 45, 57–61.) At this stage, those allegations must be taken as true, and ESPN's assertions to the contrary—that, in actual practice, the information disclosed does not identify users—are inappropriate for resolution without discovery. *See Livid Holdings Ltd.*, 416 F.3d at 946 (noting that "the court construes the complaint in the light most favorable to the non-moving party"). Additionally, given the nature of Adobe's business and the way it operates, the disclosures alleged by Eichenberger are largely similar to the Facebook disclosures recognized in *Hulu* and cited favorably in *Nickelodeon*—just as Facebook's core business involves and depends on associating randomized Facebook IDs with specific individuals in a manner "akin to" a name,

Plaintiff's Resp. in Opp.
to R. 12(b)(6) Mot. to Dismiss
(No. 2:14-cv-00463)

- 12 -

**Edelson PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

Eichenberger alleges that Adobe's business involves and depends on associating device identifiers with specific individuals in a manner "akin to" a name. (Compl. ¶¶ 15, 16, 22.)

ESPN also relies on *Nickelodeon* to "dispel[] any notion that VPPA liability can be based on the actions of the recipient of unique, anonymous device identifiers." (MTD at 10.) This reasoning of the *Nickelodeon* decision ignores its clear endorsement of the *Hulu* court's context-dependent analysis. *See Nickelodeon*, 2014 WL 3012873 at *9. To the extent *Nickelodeon* can be read to support such a proposition, however, it simply ignores practical realities. As the *Hulu* court noted, "[o]ne can be identified in many ways: by a picture, by pointing, by an employee number, by the station or office or cubicle where one works . . . ." *Hulu*, 2014 WL 1724344, at *11. These examples demonstrate the importance of context and of the recipient's access to and knowledge of information that may render the disclosure identifying. For instance, were a video tape service provider to provide an employer with a list of its employees' video rental histories, listed by employee number and no other information whatsoever, such a disclosure would clearly be personally identifying. The same disclosure made to a passerby on the street would be meaningless. Likewise for a video tape service provider's disclosure of rental histories associated with specific Washington State driver's licenses. If disclosed to the Washington State Department of Licensing, such a disclosure would be personally identifying. If disclosed to a local restaurant, it likely would not. Here then, the scope of Adobe's existing databases is vitally important. And Eichenberger alleges that Adobe possesses stores of information and profiles of individual consumers of sufficient detail that ESPN's disclosures were personally identifying. (Compl. ¶¶ 15, 16, 19, 21–32, 45 58, 59.) At this stage, he need not allege anything more.

For the same reasons, ESPN's characterization of the *Hulu* case is misplaced. There, the court held that a Plaintiff's assertion that "[a]nonymous disclosures . . . hypothetically *could have been linked* to video watching" was insufficient to establish the disclosure of PII. *Hulu*, 2014 WL 1724344, at *1. While the plaintiffs in *Hulu* showed (*on summary judgment*) only that the third-party recipient had the "key" to allow identification of otherwise anonymous viewing histories—and expressly *did not* show that such a "key" was used. *See id.* at *12 ("There is no

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1    evidence that comScore did this. The issue is only that it could."). Eichenberger here has alleged

2    that Adobe *does* actually identify specific individuals as having watched specific video materials

3    through the WatchESPN Channel, and is entitled to a presumption of accuracy in those

4    allegations. (*See* Compl. ¶¶ 14, 45, 58 – 60.)

5              Equally misplaced is ESPN's reliance on *Pruitt v. Comcast Cable Holdings, LLC*, 100

6    Fed. Appx. 713 (10th Cir. 2004) and *Viacom Int'l Inc. v. YouTube, Inc.*, 253 F.R.D. 256

7    (S.D.N.Y. 2008) for the proposition that unique identifiers can never be personally identifying.

8    (*See* MTD at 9.) In *Pruitt*, the court held that because the information at issue—unique

9    anonymous identifiers stored in Comcast cable boxes—had not been combined with the

10   identifying information from Comcast's own databases, it was not "personally identifying." *Id.*

11   Thus, while "*Pruitt* stands for the proposition that an anonymous, unique ID *without* more does

12   not constitute PII . . . it also suggests that if an anonymous, unique ID were disclosed to a person

13   who could understand it, that might constitute PII." *Hulu*, 2014 WL 1724344, at \*11 (emphasis

14   in original) (citing *Pruitt*, 100 F. App'x. at 716). However, the recipient of the Roku serial

15   numbers in this case, Adobe, can *and does* identify specific individuals using those IDs, (Compl.

16   ¶¶ 14, 45, 57–61), and therefore, *Pruitt* is inapposite.

17             Likewise for *Viacom*. As the *Hulu* court explained:

18        What was at issue [in *Viacom*], however, was not the users' identities. Instead,
         because the case was a copyright case against YouTube, what mattered was the
19        number of times the users viewed particular videos. [*Viacom*, 253 F.R.D. at 262.]
         YouTube "did not refute that the login ID is an anonymous pseudonym that users
20        create for themselves when they sign up with YouTube which *without more*
         cannot identify specific individuals" *Id.* at 262. (emphasis added). The Court
21        dismissed YouTube's privacy concerns as speculative and ordered discovery. *Id.*

22        That result makes sense: the case was about discovery to establish copyright
         damages, not consumers' identities. The consumer identities were not relevant.
23        Indeed, Viacom issued a press release that the parties would anonymize the data
         before disclosure to address YouTube users' privacy concerns. [Citation omitted.]
24        Also, the decision does not provide enough of a factual context to determine
         whether the user IDs in *Viacom* identified a person or were anonymized. The
25        case's holding is relevant only to the extent that it recognizes that unique
         anonymous IDs do not necessarily identify people.

26

27

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370  •  Fax: 312.589.6378

1   *Hulu*, 2014 WL 1724344, at **9–10.[5]

2              *                 *                 *

3          For these reasons, the Roku serial numbers disclosed by ESPN allowed Adobe to identify

4   individuals, including Eichenberger, as having viewed specific video materials, and are

5   therefore, PII.

6   **II.     Eichenberger Falls Within the VPPA's Definition of a "Consumer" Because**
    **He Downloaded, Installed, and Watched Video Content through the ESPN**

7   **Channel on His Roku Device.**

8          ESPN next argues that Eichenberger is not a "consumer" as contemplated by the VPPA

9   because he is neither a "subscriber" to nor a "renter" of "goods or services" as those terms are

10  defined in the statute. (MTD 15–16); *see also* 18 U.S.C. § 2710(a)(1) (defining "consumer" as

11  "any renter, purchaser, or subscriber of goods or services from a video tape service provider.").

12  ESPN is wrong—Eichenberger is both a "subscriber" and "renter" for the purposes of his VPPA

13  claim.

14            A.     <u>As an ESPN Channel Subscriber, the VPPA Applies to Eichenberger.</u>

15         ESPN first contends that Eichenberger is not a "subscriber" to WatchESPN because he

16  supposedly failed to allege "that he provided his name or any other information to WatchESPN

17  or that he viewed content regularly on WatchESPN." (MTD at 15.) But those allegations are not

18  actually required.

19         The VPPA does not define "subscriber." *See* 18 U.S.C. § 2710(a). Thus the Court must

20  "give [the term its] ordinary meaning." *Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187

21  (1995). In the context of online services like WatchESPN, "subscribe" refers to "[a]n

22  arrangement by which access is granted to an online service."[6] The *Hulu* court confirmed as

23

24  [5]     ESPN also relies on the cases of *Johnson v. Microsoft Corp.*, No. 06-cv-0900, 2009 WL 1794400 (W.D. Wash. June 23, 2009); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012); and *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331 (E.D. Pa. 2012) to argue that the mere possibility of identification is insufficient to make information personally identifying. As described above, however, Eichenberger does not allege the mere possibility of identification, but rather that he has *already been* identified as having viewed specific video materials. (Compl. ¶¶ 14, 45, 58 – 60.)

27  [6]     *See*, *e.g.*, *subscribe (1.1)*, Oxford Dictionaries,

**EDELSON PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

much, finding that an online video subscriber relationship existed where plaintiffs alleged that "[t]hey visited hulu.com and viewed video contend," "regardless of whether they were registered and logged in." *See In re Hulu Privacy Litig.*, No. 11-cv-3764, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012).[7]

Here, Eichenberger's allegations fit the common usage of "subscribe" as used in the online video service context. He alleges that he downloaded and installed WatchESPN (thereby entering into an agreement with ESPN to deliver him streaming video content through the Channel) and did in fact request and receive video content delivered by ESPN through WatchESPN. (Compl. ¶¶ 10, 42, 56, 58.)

Notwithstanding, ESPN argues that Eichenberger didn't subscribe to WatchESPN because there's no allegation that he "viewed content regularly," as supposedly would be required "to receive a periodical service regularly on order," and thereby subscribe. (MTD at 15.) But Eichenberger alleges that WatchESPN delivers ESPN's proprietary programming, including "Latest News" and live sporting events, (Compl. ¶ 11, Fig. 1; Compl. ¶ 13), which necessarily re-cycle regularly. Thus, WatchESPN content is delivered to him regularly, whether he watches it or not. (*See id.* ¶¶ 42, 56, 58.)

Like the plaintiffs in *Hulu*, then, Eichenberger used a video streaming service—provided by ESPN—to view video content. (*Id.*) Thus, he is a "subscriber" under the plain meaning of the term because he downloaded, installed, and used WatchESPN, through which video content was delivered. *See In re Hulu Privacy Litig.*, 2012 WL 3282960, at *8.

---

http://www.oxforddictionaries.com/definition/english/subscribe (last accessed August 27, 2014); *subscribe*, Encyclopedia.com, http://www.encyclopedia.com/topic/subscribe.aspx (last accessed August 27, 2014); *subscribing (2)*, FindMe Words, http://www.findmewords.com/definition-of-subscribing.html (last accessed August 27, 2014) ("[A]rrange for access to an electronic mailing list or service.").

[7]     This usage of "subscribe" also fulfills the VPPA's purpose of "preserv[ing] personal privacy with respect to the . . . delivery of . . . audiovisual materials" by ensuring that the viewing records of streaming video users will have their privacy protected. S. Rep. 100-599, (1988).

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS
(No. 2:14-cv-00463)

- 16 -

**Edelson PC**
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

B.   <u>Because ESPN Provided Eichenberger a Temporary License to Access and View Videos in Exchange for Being Exposed to Advertisements, He is Also a "Renter" of Those Videos.</u>

ESPN argues further that Eichenberger is not a "renter" (and therefore, not a "consumer") of its video content either because he does not allege that he "paid any money to ESPN to use WatchESPN." (MTD at 16.) That argument misses its mark too.

"Rent" commonly refers to the act of being "let or hired out at a specified rate[.]"[8] In other words, a "renter" relationship is based upon the exchange of "consideration" for the temporary use of property. Black's Law Dictionary (3rd Pocket Ed. 2006). In line with this definition, "valuable consideration" is defined as "consideration that [] confers a pecuniarily measurable benefit on one party[.]" *Id.* As such, to be a "renter" does not require the exchange of money (as ESPN argues), but rather, the exchange of a benefit between parties.[9]

Eichenberger's allegations demonstrate that he is a "renter" under the common usage of the term. In particular, he alleges that when he requested to "view specific videos" on WatchESPN, he was "exposed to Defendant's advertisements" as consideration for obtaining the requested content. (Compl. ¶ 56.) He was required to watch these advertisements each time he requested video content on WatchESPN. (*Id.*) Thus, he conferred a benefit on ESPN by generating advertising revenues for it each time he requested video content from WatchESPN, and in exchange for that benefit, he was "grant[ed] [] a temporary license to access and view specific videos . . . ." (*Id.*)

Thus, Eichenberger can appropriately be considered a "renter" as well as a "subscriber" under the VPPA, and ESPN's arguments in this regard should be rejected as well.

---

[8]   *Rent (1.2)*, http://www.oxforddictionaries.com/us/definition/american_english/rent?q=rent; *see also rent (1.1)*, *id.*, (defining "rent" as an act ([o]f an owner) let[ting] someone use (something) in return for payment).

[9]   To the extent the *Hulu* Court held otherwise (MTD at 16), it improperly ignored the common usage of the term "rent." *See* Black's, *supra*; *see also Asgrow*, 513 U.S. at 187.

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS                    - 17 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1

## CONCLUSION

2        For the reasons stated above, Plaintiff Chad Eichenberger, individually and on behalf of

3   all others similarly situated, respectfully requests that this Honorable Court deny ESPN's Motion

4   to Dismiss in its entirety and award such other relief as it deems necessary, reasonable, and just.

5                                    Respectfully submitted,

6                                    **CHAD EICHENBERGER,** individually and on
                                     behalf of all others similarly situated,

7

8   Dated: August 27, 2014           By: /s/ Benjamin H. Richman
                                          One of Plaintiff's Attorneys

9                                    Jay Edelson (Admitted *Pro Hac Vice*)
                                     jedelson@edelson.com
10                                   Rafey S. Balabanian (Admitted *Pro Hac Vice*)
                                     rbalabanian@edelson.com
11                                   Benjamin H. Richman (Admitted *Pro Hac Vice*)
                                     brichman@edelson.com
12                                   J. Dominick Larry (Admitted *Pro Hac Vice*)
                                     nlarry@edelson.com
13                                   EDELSON PC
                                     350 North LaSalle Street, Suite 1300
14                                   Chicago, Illinois 60654
                                     Tel: 312.589.6370
15                                   Fax: 312.589.6378

16                                   Cliff Cantor, WSBA # 17893
                                     cliff.cantor@outlook.com
17                                   LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
                                     627 208th Avenue SE
18                                   Sammamish, Washington 98074
                                     Tel: 425.868.7813
19                                   Fax: 425.732.3752

20

21

22

23

24

25

26

27

PLAINTIFF'S RESP. IN OPP.
TO R. 12(B)(6) MOT. TO DISMISS
(No. 2:14-cv-00463)

- 18 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF SERVICE

I, Benjamin H. Richman, hereby certify that on August 28, 2014, I served the above and foregoing *Plaintiff's Response in Opposition to Defendant's Motion to Dismiss* by causing a true and accurate copy of such paper to be filed and transmitted to all counsel of record via the Court's CM/ECF electronic filing system, on this the 27th day of August 2014.

/s/ Benjamin H. Richman

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378