HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

CHAD EICHENBERGER, individually and on behalf of all others similarly situated,

Plaintiff,

v.

ESPN, INC., a Delaware corporation,

Defendant.

NO. 2:14-CV-00463-TSZ

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

1

**TABLE OF CONTENTS**

2

**Page**

3    I.      INTRODUCTION .......................................................................................... 1

4    II.     ARGUMENT ................................................................................................. 3

5            A.     Plaintiff fails to state a claim because he does not allege any disclosure of
                    personally identifiable information. ..................................................................... 3

6

7                   1.      The alleged disclosure does not "identify a person." ................................ 3

8                   2.      Plaintiff alleges no facts supporting a reasonable inference that
                            Adobe personally identified him or any other WatchESPN user as
9                           required to state a plausible claim for relief under *Twombly/Iqbal*. .......... 6

10           B.     Plaintiff fails to state a claim because he is not a "consumer" under the
                    VPPA. .................................................................................................................. 9

11

12   III.    CONCLUSION ............................................................................................... 11

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - i
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

## I.   INTRODUCTION

As ESPN demonstrated in its opening brief, Plaintiff's First Amended Complaint should be dismissed because he has not alleged any disclosure of personally identifiable information ("PII") and he is not a "consumer" under the Video Privacy Protection Act ("VPPA").  Plaintiff alleges that the WatchESPN channel ("WatchESPN"), which allows users to stream ESPN video content to their televisions through a Roku device, transmits Roku device serial numbers and video selections to Adobe, a data analytics company.  These allegations fail to state a claim under the VPPA for three independent reasons.

*First*, a Roku device serial number is not PII under the VPPA because it does not "*without more, itself link* an actual person to actual video materials."  *See In re Nickelodeon Consumer Privacy Litig.* ("*Nickelodeon*"), MDL No. 2443, 2014 WL 3012873, *10 (D.N.J. July 2, 2014) (emphasis added).  Under the VPPA, PII is defined to include "any *information which identifies a person* as having requested or obtained specific video materials or services."  18 U.S.C. § 2710(a)(3) (emphasis added).  In his opposition, Plaintiff argues that "where, as here, a video service provider (like ESPN) discloses a unique identifier (like a Roku serial number) and video viewing history to a third party (like Adobe), which *actually uses that information to identify specific individuals* and the video materials they viewed, the information disclosed is PII."  Opposition ("Opp") at 7 (emphasis added).  Thus, Plaintiff asks the Court to ignore the express language of the VPPA, prohibiting disclosure of *information that identifies a person*, and to read in new language to also cover *information that is used by the recipient to identify a person*.  Such an interpretation is contrary to the plain text of the VPPA and case law interpreting it and would result in an unwarranted expansion of the scope of the VPPA, from prohibiting disclosures based on the nature of the information disclosed (*i.e.*, information that identifies a person) to prohibiting disclosures, and imposing liability, based on the actions of third parties.  The Court should reject Plaintiff's invitation to rewrite the VPPA in this way.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 1
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

*Second*, even under Plaintiff's incorrect interpretation of what constitutes PII, he does not plead facts necessary to state a plausible claim for relief under *Twombly* and *Iqbal*. Plaintiff's theory of liability is that Roku device serial numbers sent by WatchESPN to Adobe are PII because Adobe uses information from Roku—Roku device serial numbers and personal information—to "look up" and personally identify WatchESPN users. According to Plaintiff, "What ESPN is alleged to have essentially done, then, is disclose a unique identifier (his Roku serial number) to a third-party (Adobe) that already possessed a correlated look-up table." Opp. at 8 (internal citations and quotations marks omitted). Plaintiff argues that the Court must accept this conclusory allegation as true for purposes of deciding ESPN's motion. He is wrong. Under the pleading requirement set forth in *Twombly* and *Iqbal*, Plaintiff must allege *facts* supporting a reasonable inference that Adobe obtains Roku device serial numbers and personal information from Roku to create a "correlated look-up table" and then uses that information to personally identify WatchESPN users.

In opposition, Plaintiff backs away from his conclusory allegation that Adobe obtains that "look up" information from Roku and argues that the information "could come" from other sources. This argument does nothing to address the pleading defects that require dismissal of Plaintiff's VPPA claim—Plaintiff has not alleged facts to support a reasonable inference that Adobe *actually received* information required to personally identify WatchESPN users (whether from Roku or another source) or that Adobe *actually used* such information to personally identify WatchESPN users. Plaintiff's failure to allege such facts, in combination with allegations that contradict his theory of liability, requires dismissal of his VPPA claim. Plaintiff's (repeated) urging that the Court should allow him to conduct discovery to determine if such facts exist is exactly the type of fishing expedition that the pleading requirement of *Twombly* and *Iqbal* is meant to prevent. Plaintiff must allege such facts, if they exist, to state a plausible claim for relief *before* subjecting ESPN to the burdens and cost of discovery.

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

*Third*, Plaintiff's VPPA claim should be dismissed for the independent reason that he does not adequately allege that he was a "renter" or "subscriber" under the VPPA.  In response to this argument, Plaintiff cites to dictionary definitions that he prefers to those in Merriam-Webster and then stretches them beyond their ordinary meaning to fit his arguments.  Because the definitions cited by ESPN reflect the common understanding of the terms "renter" and "subscriber," and Plaintiff's use of WatchESPN on a Roku device does not satisfy either definition, he cannot state a claim under the VPPA.

For the reasons set forth in ESPN's opening brief and below, and because Plaintiff has already had two opportunities to state a claim, Plaintiff's First Amended Complaint should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Plaintiff fails to state a claim because he does not allege any disclosure of personally identifiable information.

#### 1.    The alleged disclosure does not "identify a person."

The VPPA prohibits disclosure of PII, which is defined to include "*information which identifies a person* as having requested or obtained specific video materials or services."  18 U.S.C. § 2710(a)(3) (emphasis added); *see also* S. Rep. No. 100-599, at 12 (1988) (explaining that the VPPA prohibits disclosure of "*information that identifies a particular person* as having engaged in a specific transaction with a video tape service provider") (emphasis added).  Plaintiff contends that Roku device serial numbers sent from WatchESPN to Adobe are PII because Adobe uses Roku device serial numbers and personal information obtained from Roku to personally identify WatchESPN users.  Accepting Plaintiff's theory of liability, would expand the definition of PII under the VPPA to include "information which identifies a person *[or which the recipient uses to identify a person based on information obtained from other sources]* as having requested or obtained specific video materials or services."  *See* Opp. at 4, 7.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 3
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

1    This expanded definition of PII should be rejected, first and foremost, because it is

2    inconsistent with the plain language of the VPPA.  Under the VPPA, PII is information that

3    *identifies a person*, not information that *somehow can be used to identify a person*.  This is

4    consistent with *Nickelodeon*, the most recent case to examine this issue.  In *Nickelodeon*, the

5    court held that information disclosed by Viacom to Google, including unique device identifiers,

6    was not PII because it was "simply not information that, *without more*, identifies a person—an

7    actual, specific human being—as having rented, streamed, or downloaded a given video."

8    *Nickelodeon*, 2014 WL 3012873, at *11.  It was irrelevant, in the court's view, that the

9    information "might one day serve as the basis of personal identification after some effort on the

10   part of the recipient."  *Id.*  Similarly, in *In re Hulu Privacy Litig.* ("*Hulu*"), No. C11-03764, 2014

11   WL 1724344, *3-4 (N.D. Cal. Apr. 28, 2014), the court held that disclosure of Hulu User IDs by

12   Hulu to comScore, another data analytics company, was not PII despite the plaintiffs' allegation

13   that comScore could have used the Hulu User IDs to personally identify Hulu users based on

14   other information that Hulu *did not* send to comScore.  That the Hulu User IDs "could have been

15   linked to video watching" did not render them PII.  *Id.* at *1, *12.[1]  Thus, both courts to consider

16   the issue of what constitutes PII within the meaning of the VPPA have held that the determining

17   factor is whether the information *itself* identifies a person.

18       Plaintiff's attempt at analogies only highlights that whether a disclosure constitutes PII

19   under the VPPA turns on the nature of the information itself, not whether or how the recipient

20   uses the information.  According to Plaintiff, disclosing a Roku device serial number to Adobe is

21   the same as disclosing a person's employee number to his employer or his Washington State

22   driver's license number to the Washington State Department of Licensing.  In both of these

23   situations, however, the information disclosed was created by the recipient for the purpose of

24   identifying a person and thus *itself* identifies a person.  Plaintiff also points to the distinction

25

26   ---
     [1] As noted in ESPN's opening brief, these holdings are also consistent with cases outside of the VPPA context
     which hold that unique identifiers—without more—are not PII.  *See* ESPN's Motion to Dismiss Plaintiff's First
     Amended Complaint ("Mot.") at 9 & n.3.

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

drawn by the court in *Hulu* between the alleged disclosure of Facebook IDs to Facebook and Hulu User IDs to comScore.  But, again, the Hulu court's holding turned on whether, under the particular circumstances of that case, information disclosed could *itself* identify a person.  *Id.* at *14 (holding there was a material issue of fact as to whether Facebook IDs collected and transmitted to Facebook by a cookie placed by Facebook on Hulu's website constitute PII, reasoning that Facebook IDs "could show the Hulu user's identity on Facebook").  None of these examples is analogous to WatchESPN's transmission of anonymous Roku device serial numbers to Adobe for the purpose of aggregating WatchESPN usage patterns to improve user experience.

Next, Plaintiff cites to the "findings by several government agencies and leading academics," none of which supports deviating from the plain language of the VPPA.  Plaintiff cites to a publication from the National Institute of Standards and Technology ("NIST"), defining PII to include "any information that can be used to distinguish or trace an individual's identity," or that is "linked or linkable to an individual[.]"  Opp. at 6.  This citation has no application here because, as NIST makes clear, this definition is "intended primarily for U.S. Federal government agencies" to protect against the risk of "security breaches," and "uses a broad definition of PII to identify as many potential sources of PII as possible."[2]  Next, Plaintiff cites to an FTC report, concluding that storing PII into separate repositories does not change its character as PII.  *Id.*  Again, this citation does not apply here because it addresses how storage of PII affects its status as PII, not what type of information constitutes PII.  Finally, Plaintiff cites to "renowned privacy scholars" who conclude that "[w]hile some attributes may be uniquely identifying on their own, any attribute can be identifying in combination with others."  *Id.* at 6, n.1.  This citation, like the others, does not support Plaintiff's position and, indeed, proves too much.  If "any attribute can be identifying in combination with others," then all providers of streaming video service who work with a data analytics company to understand usage patterns and improve user experience, as ESPN does here, are subject to VPPA liability.

---

[2] http://csrc.nist.gov/publications/nistpubs/800-122/sp800-122.pdf at ES-1.

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

2.    **Plaintiff alleges no facts supporting a reasonable inference that Adobe personally identified him or any other WatchESPN user as required to state a plausible claim for relief under _Twombly/Iqbal_.**

Plaintiff contends that, even though a Roku device serial number does not, _without more_, identify a person, his allegation that _Adobe actually identifies_ specific individuals as having requested video content through WatchESPN provides the "more" that transforms an anonymous Roku device serial number into PII.  Specifically, Plaintiff alleges that "[w]hat ESPN is alleged to have essentially done [] is disclose a unique identifier (his Roku serial number) to a third-party (Adobe) that already possessed a correlated look-up table."  Opp. at 8 (internal citations and quotation marks omitted).  Thus, Plaintiff acknowledges that, under his theory of liability, prior to receiving any information from WatchESPN, Adobe must obtain and link Roku device serial numbers and personal information for WatchESPN users.  First Amended Complaint ("FAC") ¶ 24 ("Adobe links a Roku's serial number with its owner").  Otherwise, there would be no way for Adobe to "look up" and personally identify WatchESPN users based on _only_ Roku device serial numbers.

Under _Twombly and Iqbal_, to survive a motion to dismiss, Plaintiff must "'state a claim to relief that is plausible on its face.'"  _Ashcroft v. Iqbal_, 556 U.S. 662, 678 (2009) (quoting _Bell Atl. Corp. v. Twombly_, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  _Id._  Conclusory allegations of fact, just like conclusory allegations of law, are not "factual content" that support a plausible claim for relief.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  _Moss v. U.S. Secret Service_, 572 F.3d 962, 969 (9th Cir. 2009); _see also Levitt v. Yelp! Inc._, 11-17676, 2014 WL 4290615, at *9-11, --- F.3d ---- (9th Cir. Sept. 2, 2014) (allegations that defendant was the author of negative online reviews were insufficient because they were not supported by facts; the only factual allegations in the complaint generally alleged that _some_

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 6
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

reviews on the website were authored by the defendant but "nothing connect[ed] these general allegations to the specific, negative reviews complained of" by the plaintiffs); *Eclectic Properties E., LLC v. The Marcus & Millichap Co.*, 751 F.3d 990, 998-99 (9th Cir. 2014) (rejecting allegation that property at issue in the case had a certain value because allegation was conclusory and not supported by facts and, in fact, was inconsistent with the facts that were alleged).

As explained in ESPN's opening brief and below, Plaintiff's theory of liability against ESPN is not plausible on its face because he does not allege any facts to support a reasonable inference that Adobe could, much less did, use Roku device serial numbers from WatchESPN to personally identify WatchESPN users and their video selections. In his opposition, Plaintiff backs away from some allegations, describes others as supporting points that only confirm there is no factual basis for his theory of liability, and, as a last resort, argues that his allegations "must be accepted as true and all reasonable inferences must be drawn in [his] favor." Opp. at 2. As explained below, Plaintiff either misunderstands or misstates the pleading requirement articulated in *Twombly* and *Iqbal*. As set forth above, under *Twombly* and *Iqbal*, Plaintiff must allege facts from which the Court can draw reasonable inferences to support his theory of liability so as to establish a plausible claim for relief. Plaintiff does not meet this standard.

The lynchpin of Plaintiff's theory that Adobe identifies specific individuals and their video selections using Roku device serial numbers from WatchESPN is his allegation in the FAC that "evidence suggests that Adobe can determine a person's identity using the Roku serial number because it obtains demographic information *from Roku* itself." FAC ¶ 24 (emphasis added). ESPN explains in its opening brief that the "evidence" cited in the FAC does not support, and in fact contradicts, Plaintiff's contention that Roku provides any such information to Adobe. In response, Plaintiff walks away from this allegation, arguing that there "is no reason that Roku itself would have to provide the information allowing such a correlation to be made." Opp. at 8. Instead, Plaintiff now contends that the information necessary to "look up" specific

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

individuals based on Roku device serial numbers "*could come* from other Roku channels, other data analytics or data mining companies, or even from the consumer himself in other transactions with Adobe." *Id.* (emphasis added); *see also id.* at 9.  Plaintiff does not identify any facts to support this new contention—no Roku channel, no data analytics company, and no consumer that actually provided any such information to Adobe—and, of course, it does not save Plaintiff's claim in any event because it is not alleged in the FAC.

Plaintiff argues that, in challenging his failure to allege "facts" to show the plausibility of his theory of liability, ESPN is asking the Court to "draw inferences in [ESPN's] favor." *Id.* at 8.  This argument misses the mark entirely.  As explained above, to survive a motion to dismiss, Plaintiff must establish that his claim for relief is "plausible on its face," which requires him to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 570).  Thus, to state a VPPA claim based on his theory of liability, Plaintiff must allege *facts*— not simply *conclusions of fact*—that allow this Court to draw reasonable inferences that Adobe *actually obtains* Roku serial numbers and personal information for WatchESPN users from Roku and that Adobe *actually uses* that information to look up and personally identify WatchESPN users and their video selections.  *See Levitt*, 2014 WL 4290615, at * 9-11; *Eclectic Properties*, 751 F.3d at 998-99; *Routt v. Amazon.com, Inc.*, No. 12-1307, 2012 WL 5993516, at *2-3 (W.D. Wash. Nov. 30, 3012) (granting motion to dismiss where plaintiff alleged that Amazon had "control" over the actions of a third party but did "not allege sufficient non-conclusory factual matter to state a plausible claim that the relationship between Amazon and its Associates is anything other than the relationship described in the Agreement," which did not give Amazon such control).  Other than Plaintiff's conclusory, and now disavowed, allegation that Roku provided Roku device serial numbers and personal information to Adobe, the FAC does not allege any facts to support a reasonable inference that Adobe could or did create a "correlated look-up table" that would have allowed Adobe to personally identify WatchESPN users, let

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 8
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

alone that it actually did.  *See* Opp. at 11.  As a result, Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [and the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.[3]

> **B.   Plaintiff fails to state a claim because he is not a "consumer" under the VPPA.**

Even if Plaintiff could allege that WatchESPN disclosed PII, which he cannot, his claim should be dismissed because he is not a "consumer" within the meaning of the VPPA.  As explained in ESPN's opening brief, the VPPA defines "consumer" as "any renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  Plaintiff argues that he is both a "subscriber" and a "renter," and concedes that the terms "subscriber" and "renter" should be given their ordinary meaning.  Mot. at 15; Opp. at 15, 17.  Plaintiff misstates the ordinary meaning of these terms and therefore wrongly concludes that he fits within them.

Merriam-Webster's Dictionary defines "to subscribe" as "to enter one's name for a publication or service" or "to receive a periodical service regularly on order."  Mot. at 15.  Plaintiff concedes that he never provided ESPN with his name, and he does not allege that he viewed video content on ESPN "regularly"—only that he viewed "numerous" video clips.  He argues, however, that the allegation that WatchESPN video content includes news and live sporting events "necessarily" implies that "WatchESPN content is delivered to him regularly, whether he watches it or not."  Opp. at 16.  In point of fact, the nature of streaming video is that content is not delivered until it is selected by the user for viewing—or else Internet connections and device hard drives would be overloaded with content.  *See e.g.*, *Viacom Int'l, Inc. v.*

---

[3] This is the case even if, for the sake of argument, Plaintiff's dubious allegations regarding Adobe's privacy policy, the interview with Christopher Comstock of Adobe, and the marketing materials for Adobe are credited.  At most, those documents establish that Adobe has and receives data, as one might expect from a data analytics company.  But Plaintiff does not dispute that none of the documents states that Adobe has data linking Roku device serial numbers to individual identities, which was the point ESPN made by addressing them in the Motion.  Accordingly, Plaintiff's refrain that the Court should resolve ambiguities in those documents by drawing inferences in his favor does not help him avoid dismissal here.  *See* Opp. at 2, 9 n.3, 10, 11.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 9
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

*YouTube, Inc.*, 676 F.3d 19, 28 (2d Cir. 2012) ("The YouTube system allows users to gain access to video content by 'streaming' the video to the user's computer in response to a playback request.").  In any event, this argument should be rejected because there is no factual basis for it in the FAC.  *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064-65.  (9th Cir. 2008).

Next, Plaintiff appears to take the position that Merriam-Webster's definition of "subscribe" is wrong, citing instead to an Oxford English Dictionary definition.  At first glance, this alternate definition appears not to require providing one's name or receiving a regular service.  But the cited definition is subordinate to another that defines "subscribe" as "arrange to receive something regularly, typically a publication, by paying in advance."[4]

Plaintiff's final argument, that, under *Hulu*, all users of streaming video services are "subscribers" under the VPPA is simply wrong.  While the Hulu court rejected Hulu's argument that the plaintiffs were not subscribers because they did not pay anything, it did so noting that the plaintiffs alleged that Hulu profile pages with their names had been exposed to comScore.  *See In re Hulu Privacy Litig.*, No. C11-03764, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012).  Here, Plaintiff does not allege that WatchESPN users had profile pages, paid any money, or provided their names or any other identifying information to ESPN.  His allegations do not establish that he was a "subscriber."

Plaintiff's argument that he was a "renter" asks the Court to find that Merriam-Webster's definition of that term is wrong (again) and that *Hulu*'s analysis of its meaning under the VPPA is also wrong.  Merriam-Webster defines "renter" as one who *pays* rent.  The *Hulu* court held that the term "renter" "necessarily impl[ies] payment of money."  *Hulu*, 2012 WL 3282960, at *8; Mot. at 16.  Here, there is no allegation that Plaintiff paid anything to view ESPN video content using WatchESPN.  Plaintiff cites to Oxford English Dictionary definitions of "rent" that

---

[4] *See* http://www.oxforddictionaries.com/definition/american_english/subscribe. The two other sources that Plaintiff cites as providing additional support for his preferred definition are simply free websites that quote verbatim to the Oxford English Dictionary (with attribution).  Opp. at 15-16 & n.6.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 10
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

refer to "payment" and "rate," which he combines to mean "valuable consideration," and then cites to Black's Law Dictionary for a definition of "valuable consideration" that he argues requires a user to watch advertisements in exchange for accessing video content.  Opp. at 17. This argument is strained, to say the least, and in fact it contradicts the Black's Law Dictionary definition of "rent" as "[t]o *pay* for the use of another's property."  Black's Law Dictionary (9th ed. 2009).

### III.    CONCLUSION

For the reasons set forth above and in ESPN's opening brief, Plaintiff's First Amended Complaint should be dismissed with prejudice.

DATED: September 10, 2014.

MUNGER TOLLES & OLSON LLP

*s/ Glenn D. Pomerantz*
Glenn D. Pomerantz
Email:  glenn.pomerantz@mto.com
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071
Telephone: 213-683-9100

Rosemarie T. Ring
Email:  rose.ring@mto.com
Jonathan H. Blavin
Email:  jonathan.blavin@mto.com
Bryan H. Heckenlively
Email:  bryan.heckenlively@mto.com
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA 94105
Telephone : 415-512-4000

*Admitted Pro Hac Vice*

CAIRNCROSS & HEMPELMANN, P.S.

*s/ J. Thomas Richardson*
J. Thomas Richardson
Email: trichardson@cairncross.com

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 11
(No. 2:14-CV-00463)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Ana-Maria Popp
Email: apopp@cairncross.com
Cairncross & Hempelmann, PS
524 Second Avenue, Suite 500
Seattle, WA  98104-2323
Telephone:  206-587-0700

Counsel for ESPN, Inc.

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 12
(No. 2:14-CV-00463)

1

**<u>Certificate of Service</u>**

2
      I, Bryan H. Heckenlively, certify under penalty of perjury that on September 10, 2014, I

3
electronically filed this document entitled Defendant's Reply in Support of Motion to Dismiss

4
Plaintiff's First Amended Complaint using the CM/ECF system which will send notification of

5
such filing to the following persons:

6
    Clifford A. Cantor

7
    627  208th Avenue SE
    Sammamish, WA  98074

8
    Cliff.cantor@outlook.com
    *Counsel to Plaintiff*

9
    Jay Edelson

10
    Rafey S. Balabanian
    Benjamin H. Richman

11
    J. Dominick Larry
    Edelson PC

12
    350 North LaSalle Street
    Suite 1300

13
    Chicago, IL  60654
    jedelson@edelson.com

14
    rbalabanian@edelson.com
    brichman@edelson.com

15
    nlarry@edelson.com
    *Counsel to Plaintiff*

16

17
    DATED this 10th day of September, 2014, at San Francisco, California.

18

19
               *s/ Bryan H. Heckenlively*

20
               Bryan H. Heckenlively
               MUNGER, TOLLES & OLSON LLP

21
               560 Mission Street
               Twenty-Seventh Floor

22
               San Francisco, CA 94105
               Telephone : 415-512-4000

23
               E-mail: bryan.heckenlively@mto.com

24

25

26

DEFENDANT'S REPLY ISO MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT - 13
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308