Honorable Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHAD EICHENBERGER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ESPN, INC., a Delaware corporation,<br><br>Defendant. | Case No.: 2:14-cv-00463<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Chad Eichenberger ("Eichenberger") brings this Second Amended Class Action Complaint and Demand for Jury Trial ("Complaint"), individually and on behalf of all others similarly situated, against Defendant ESPN, Inc. ("ESPN") to put an end to its wrongful practice of disclosing its users' sensitive information, and to obtain redress for such conduct. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys and consultation with an industry expert.

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 1 -

Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

**NATURE OF THE ACTION**

1. ESPN is one of the largest producers of sports-related news and entertainment programming in the world. Best known for its eponymous television channel, ESPN also offers content to consumers via other media, including its proprietary software application (the "WatchESPN Channel") that it developed for use with the Roku digital media-streaming device.[1]

2. Unbeknownst to ESPN users, however, each time they watch videos on the WatchESPN Channel, ESPN knowingly discloses their personally identifiable information—including a record of the video clip viewed by the user, in conjunction with the unique, identifying serial number of the user's Roku device (collectively, "PII")—to unrelated third parties. In addition to demonstrating a disregard for its users' privacy rights, ESPN's actions violate the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), which prohibits companies from disclosing their customers' video viewing records to third parties without express written consent.

3. ESPN's unlawful disclosures are especially problematic because they were made to Adobe Analytics, a leading data analytics company. The business models of such "big data" analytics companies center on the collection of disparate pieces of uniquely identifying information and online behavioral data about individual consumers, which they then compile to form comprehensive profiles about a person's entire digital life. These profiles are then used for targeted advertising, sold as a commodity to other data brokers, or both.

4. Despite the substantial privacy risks posed by the unconsented disclosure of personal information, ESPN chose to disregard Plaintiff's and thousands of other users' statutorily protected privacy rights by releasing their sensitive data into the marketplace. Accordingly, Plaintiff brings this Complaint against ESPN for its intentional and unlawful disclosure of his PII in violation of the VPPA.

---

[1] Roku is a digital media-streaming device that delivers videos, news, games, and other content to consumers' televisions via the Internet.

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 2 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

## PARTIES

5. Plaintiff Chad Eichenberger is a natural person and citizen of the State of Washington.

6. Defendant ESPN, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 935 Middle Street, Bristol, Connecticut 06010. ESPN conducts business throughout this District, the State of Washington, and the United States.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the VPPA. This Court has personal jurisdiction over ESPN because it conducts business in this District and the wrongful conduct occurred in, was directed to, and/or emanated from this District.

8. Venue is proper in this District under 28 U.S.C. § 1391(b) because ESPN conducts business in this District, the improper conduct alleged in this Complaint occurred in this District, the injury arose in this District, and Plaintiff resides in this District.

## FACTUAL BACKGROUND

**I.   ESPN Programmed the WatchESPN Channel to Transmit Users' PII to a Third Party Data Analytics Company Without Users' Consent.**

9. The WatchESPN Channel is a software application that allows consumers to view ESPN's programming on their televisions via the Roku media-streaming device.

10. To install the application on a Roku, users must visit the Roku Channel Store—Roku's proprietary online digital media platform where users can download applications (called "channels") that allow them to view specific television shows or video clips on their devices.

11. Once downloaded, installed, and launched, the WatchESPN Channel presents a main home screen where the user can view ESPN video content. (*See* Figure 1 below, showing the WatchESPN Channel's main home screen.)

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT                - 3 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378





(Fig. 1.)

12. At no time during this process does ESPN seek or obtain the consent of the user to share or otherwise disclose his or her PII to third parties for any purpose.

13. Unbeknownst to its users, however, each time they view a video clip, the WatchESPN Channel sends a record of the transaction to Adobe Analytics, an unrelated third

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 4 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

party data analytics company.[2] The complete record is sent each time that a user views a video clip, along with the serial number associated with the user's Roku device.

## II. Data Analytics Companies Rely on Unique Identifiers Associated with Digital Devices to Create Profiles on Consumers and Their Digital Behaviors.

14. Today's average consumer uses more than one device to access the Internet to do things like view digital content or make online purchases. To gain a broad understanding of a given consumer's behavior across all of the devices and applications that individual uses, companies have to find ways to "link" users' digital personas. The primary solution has been to use unique identifiers to connect the dots.

15. Unique identifiers are used to precisely identify a person and to link their activities across devices and applications. Data analytics companies—including Adobe Analytics—create user profiles comprised of behavioral data and unique identifiers, often supplied by hardware manufacturers.

16. An example of a hardware manufacturer unique identifier in the consumer electronics context is a device's serial number. That's because device serial numbers are "persistent identifiers," meaning they are unique to a specific device and remain constant for the device's lifetime.

17. Roku itself explicitly acknowledges that its devices' serial numbers are linked to the identities of their purchasers. In its Privacy Policy, Roku states that "[u]sage information uploaded from Roku Devices is personally identifiable by product serial number" and that the identifier can even be used to determine, among other demographic information, the precise store

---

[2] Adobe Analytics is a company that offers data analytics and online marketing services that it claims "allow [its] customers to create groundbreaking digital content, deploy it across media and devices, measure and optimize it over time, and achieve greater business success." *See Company*, Adobe.com, http://www.adobe.com/company.html?promoid=JZPLK (last accessed January 7, 2015). Using its services, Adobe says, helps companies "make, manage, measure, and monetize their content across every channel and screen." *Id*.

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 5 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1  and location where the product was purchased.[3]

2  18. For these reasons, developers of software for the Roku rely on the device's serial
3  number to identify and track individual users.[4]

4  19. Not surprisingly then, once Adobe matches a Roku serial number with an
5  individual, it's exceedingly difficult for that person to avoid being tracked via their Roku
6  device—making it among the most stable and reliable identifiers for a given individual.

7  **III.   ESPN's Disclosure of Its Users' PII.**

8  20. ESPN may be best known for its cable television programming, but it also
9  commands a vast audience—numbering in the hundreds of millions per month—for its various
10 digital products.[5] Thus, ESPN is in the business of providing its advertising partners with precise
11 information about, *inter alia*, the demographics of its viewers and users. To generate that data,
12 ESPN uses Adobe's analytics service.

13 21. The reason Adobe (or any other analytics company) is capable of developing an
14 understanding of an individual's digital activities is because it collects and maintains an
15 enormous amount of information about individual consumers' online behaviors (as well as
16 unique identifiers associated with individual consumers' various electronic devices) from a
17 variety of sources.

18 22. To identify, track and analyze an individual, Adobe uses a technique known as
19 "Cross-Device Visitor Identification" (or "Visitor Stitching"). In the context of this case, use of
20 the Visitor Stitching technique means Adobe links a Roku's serial number and information
21 transmitted with it (once received from the WatchESPN Channel) with the Roku's owner and

---

[3] *Privacy Policy*, Roku, http://www.roku.com/about/privacy (last accessed January 7, 2015).
[4] *See* Parker Higgins and Lee Tien, *Mobile Tracking Code of Conduct Falls Short of Protecting Consumers*, Electronic Frontier Foundation (Oct. 26, 2013), https://www.eff.org/deeplinks/2013/10/mobile-tracking-code-conduct-falls-short-protecting-consumers.
[5] *ESPN, Inc. Fact Sheet*, ESPN Media Zone, http://espnmediazone.com/us/espn-inc-fact-sheet/ (last accessed January 7, 2015).

1   connects the newly-received information with existing data already in Adobe's profile of that
2   individual—information that Adobe previously collected from other sources, including "email
3   addresses, account information, or Facebook profile information, including photos and
4   usernames."[6]

5   23.   More specifically, analysis of the network traffic transmitted from the
6   WatchESPN Channel to Adobe's servers shows that WatchESPN sends Adobe's servers Roku
7   serial numbers under the label "visitor ID." After receipt, Adobe links the visitor ID (i.e., Roku
8   serial number) to other IDs associated with the user's other device(s) and feeds the visitor ID and
9   other information transmitted with it (in this case, video viewing histories) into the user's profile.

10   24.   This practice allows Adobe (as it and ESPN have publicly represented) to identify
11   specific consumers and track them across various platforms and devices,[7] as well as to generate
12   the sorts of detailed information on those consumers' activities included in ESPN's
13   "Performance_Targeting_Insights" report.[8]

14   25.   In the end, because Adobe associates visitor ID's (here, the Roku serial number)
15   with the corresponding user information that it already possesses, WatchESPN's disclosures
16   identified Eichenberger (as described further below) to Adobe as having watched specific video
17   materials.

18   **IV.   Plaintiff Eichenberger's Experience with the WatchESPN Channel.**

19   26.   Starting in early 2013, Plaintiff Eichenberger downloaded and began using the
20   WatchESPN Channel on his Roku media-streaming device to watch sports-related events and
21   news.

22   27.   At no relevant time did Eichenberger consent, agree, or otherwise permit ESPN to
23   disclose his PII to any third-party data analytics companies.

---

[6] *Adobe Privacy Center/Analytics and on-site personalization services*, Adobe.com, http://www.adobe.com/content/dotcom/en/privacy/analytics.html (last accessed January 7, 2015).
[7] Lisa Valentino, *PTI: Performance_Targeting_Insights* at 8, ESPN Mobile (Spring 2012), http://espncms.com/ESPNCMS/files/0c/0cc69d16-781c-4566-bbb8-9d308ee9d5a3.pdf.
[8] *Id.*

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT                   - 7 -
(No. 2:14-cv-00463)

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

28. Likewise, Eichenberger has never been given the opportunity to prevent the WatchESPN Channel from disclosing his PII to third parties.

29. Nevertheless, each time Eichenberger viewed a video clip using the WatchESPN Channel, ESPN knowingly disclosed his PII as described above—in the form of his unique Roku device serial number, along with the videos he viewed—to third party data analytics company Adobe Analytics, which, on information and belief, was automatically correlated with existing user information possessed by Adobe, and therefore identified Eichenberger as having watched specific video materials.

**CLASS ALLEGATIONS**

30. **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a Class of similarly situated individuals, defined as follows:

> All persons in the United States who used the WatchESPN Channel to watch videos and who had their PII transmitted to Adobe.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

31. **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals. Class members can be easily identified through Defendant's records.

32. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common

questions for the Class include but are not limited to the following:

      a)      Whether Defendant, through the WatchESPN Channel, unlawfully disclosed and continues to unlawfully disclose its users' personally identifiable information, including their video viewing records, in violation of 18 U.S.C. § 2710(b);

      b)      Whether Defendant's disclosures were committed knowingly;

      c)      Whether Defendant disclosed Plaintiff's and Class members' personally identifiable information without their consent; and

      d)      Whether Defendant violated Plaintiff's and Class members' right to privacy.

33. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

34. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

35. **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff. Defendant has acted and failed to act on grounds generally applicable to Plaintiff and

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 9 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

1 the other members of the Class, thereby requiring the Court's imposition of uniform relief to
2 ensure compatible standards of conduct toward members of the Class. The factual and legal
3 bases of Defendant's liability to Plaintiff and to the other members of the Class are the same,
4 resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the
5 members of the Class have suffered harm and damages as a result of Defendant's unlawful and
6 wrongful conduct.

7   36.   **Superiority**: This case is appropriate for certification because class proceedings
8 are superior to all other available methods for the fair and efficient adjudication of this
9 controversy. The injuries suffered by the individual members of the Class are likely to have been
10 relatively small compared to the burden and expense of individual prosecution of the litigation
11 necessitated by Defendant's actions. Absent a class action, it would be difficult, if not
12 impossible, for the individual members of the Class to obtain effective relief from Defendant.
13 Even if members of the Class themselves could sustain such individual litigation, it would not be
14 preferable to a class action because individual litigation would increase the delay and expense to
15 all parties and the Court and require duplicative consideration of the legal and factual issues
16 presented herein. By contrast, a class action presents far fewer management difficulties and
17 provides the benefits of single adjudication, economy of scale, and comprehensive supervision
18 by a single Court. Economies of time, effort, and expense will be fostered, and uniformity of
19 decisions will be ensured.

20   37.   Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class
21 Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violations of 18 U.S.C. § 2710**
**(On behalf of Plaintiff and the Class)**

24   38.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.
25   39.   Defendant is a "video tape service provider[]" as defined by the VPPA because it
26 "engage[s] in the business, in or affecting interstate or foreign commerce, of rental, sale, or
27 delivery or prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C.

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 10 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

§ 2710(a)(4), because it provides video (i.e., "similar audio visual materials" under the VPPA's definition) to consumers via its WatchESPN Channel.

40. Plaintiff is a "consumer" as defined by the VPPA because he downloaded, installed, and watched videos using the WatchESPN Channel. 18 U.S.C. § 2710(a)(1). As such, he was a "subscriber" of "goods or services from a video tape service provider." *See id*. Additionally, because Defendant grants him a temporary license to access and view specific videos in exchange for him being exposed to Defendant's advertisements, Plaintiff is also a "renter" of video content from Defendant.

41. Under the VPPA, the term "personally identifiable information" "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710 (a)(3). The definition's usage of the word "includes" means that a more expansive reading of the term was expressly contemplated.

42. While the WatchESPN Channel was installed on his Roku, Plaintiff viewed numerous video clips using the Channel. On information and belief, including traffic analysis performed by his attorneys, during these occasions, the WatchESPN Channel knowingly sent Plaintiff's PII—including his Roku's serial number and records identifying the videos that he viewed—to the third-party data analytics company Adobe.

43. As detailed more fully in Sections II, III, and IV above, the information disclosed by the WatchESPN Channel—the combination of the Roku serial number and video viewing records—constitutes "personally identifiable information" in this context because Adobe correlates it to its existing consumer profiles to associate specific individuals with their viewing records, including Plaintiff Eichenberger.

44. Thus, Defendant's disclosure of Plaintiff's Roku serial number and video viewing records allowed Adobe to identify him and attribute his viewing choices to his profile.

45. The WatchESPN Channel's transmissions of Plaintiff's PII to Adobe constitute "knowing[] disclosures" of Plaintiff's "personally identifiable information" to a person as

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 11 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

contemplated by the VPPA. 18 U.S.C. § 2710(a)(1).

46.     At no time did Plaintiff ever provide ESPN with any form of consent—either written or otherwise—to disclose his PII to third parties.

47.     Nor were ESPN's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, the WatchESPN Channel's disclosures to Adobe were not necessary for "debt collection activities, order fulfillment, request processing, [or] the transfer of ownership." 18 U.S.C. § 2710(a)(2).

48.     As a result of Defendant's wrongful disclosures, Plaintiff and the Class have had their statutorily defined right to privacy violated. Plaintiff seeks an injunction to prohibit ESPN from releasing his and the Class's PII in the future, as well as the maximum statutory and punitive damages available under the VPPA. 18 U.S.C. § 2710(c).

## PRAYER FOR RELIEF

Plaintiff Chad Eichenberger, on behalf of himself and the Class, respectfully requests that this Court enter an order:

A.     Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Eichenberger as representative of the Class, and appointing his counsel as Class Counsel;

B.     Declaring that Defendant's actions, as set out above, violate the VPPA, 18 U.S.C. § 2710;

C.     Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendant from engaging in the wrongful acts described herein;

D.     Awarding damages, including statutory damages of $2,500 per violation, and punitive damages, where applicable, in an amount to be determined at trial pursuant to 18 U.S.C. § 2710(c);

E.     Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 12 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

F.  Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G.  Awarding such other and further relief as equity and justice may require.

**JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

**CHAD EICHENBERGER,** individually and on behalf of all others similarly situated,

Dated: January 7, 2015

By: s/ J. Dominick Larry
  One of Plaintiff's Attorneys

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin H. Richman (Admitted *Pro Hac Vice*)
brichman@edelson.com
J. Dominick Larry (Admitted *Pro Hac Vice*)
nlarry@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Cliff Cantor, WSBA # 17893
cliff.cantor@outlook.com
LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
627 208th Avenue SE
Sammamish, Washington 98074
Tel: 425.868.7813
Fax: 425.732.3752

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 13 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2015, I electronically filed the above and foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/ J. Dominick Larry

PLAINTIFF'S SECOND AMENDED
CLASS ACTION COMPLAINT
(No. 2:14-cv-00463)

- 14 -

EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370 • Fax: 312.589.6378