HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| CHAD EICHENBERGER, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>ESPN, INC., a Delaware corporation,<br><br>                    Defendant. | NO. 2:14-CV-00463-TSZ<br><br>DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT<br><br>NOTE ON THE MOTION CALENDAR: APRIL 3, 2015<br><br>ORAL ARGUMENT REQUESTED |

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

1

## TABLE OF CONTENTS

<u>Page</u>

I.    INTRODUCTION ................................................................. 1

II.   BACKGROUND ................................................................. 4

      A.    The VPPA prohibits disclosures that "identify a person." ..................... 4

      B.    WatchESPN transmits Roku device serial numbers to Adobe. ............... 4

      C.    Plaintiff contends that Roku device serial numbers "identify a person"
            based on conclusory allegations regarding Adobe. ............................ 5

      D.    The Court dismissed the First Amended Complaint upon similar
            allegations. ............................................................................ 6

III.  ARGUMENT ..................................................................... 7

      A.    Plaintiff fails to state a VPPA claim because he does not allege any
            disclosure of personally identifiable information. .............................. 7

            1.    Plaintiff does not allege any disclosure of PII by WatchESPN. ........ 7

            2.    Plaintiff's allegations regarding Adobe are speculative, and could
                  not save his claim even if they were relevant (which they are not). ......... 12

      B.    Plaintiff fails to state a VPPA claim because he is not a "consumer" under
            the VPPA. .............................................................................. 18

IV.   CONCLUSION .................................................................. 20

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - i
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

# I.     INTRODUCTION

In dismissing the First Amended Complaint, the Court held that Plaintiff failed to state a claim against Defendant ESPN, Inc. ("ESPN") under the Video Privacy Protection Act ("VPPA") because he did not sufficiently allege that ESPN disclosed personally identifiable information ("PII").  The VPPA prohibits disclosure of PII, which is defined to include "information which identifies a person as having requested or obtained specific video materials." 18 U.S.C. § 2710(a)(3).  The Court ruled that Plaintiff must allege that ESPN disclosed "*both* 'a unique identifier and a correlated look-up table by which Plaintiff could be identified as a particular person who watched particular videos.'" Dkt. No. 38 at 2 (emphasis added).  Several other courts have since issued orders consistent with this ruling, dismissing VPPA claims based on disclosures that do not themselves identify specific persons with video content, but instead are alleged to allow recipients of those disclosures to do so using information obtained from sources other than the defendant.  Consistent with the VPPA's prohibition on *disclosures by the defendant*, these rulings reject attempts to impose VPPA liability based on *conduct by the recipient* using *information from third parties*.

VPPA liability requires disclosures that themselves identify a specific person with video content, as the Court recognized in ruling that Plaintiff must allege that ESPN disclosed *both* Roku serial numbers and a "look-up table" correlating those serial numbers with personal information and video content for WatchESPN users.  Plaintiff again fails to satisfy this requirement.  He does not allege that ESPN provided his personal information to Adobe, and indeed does not even allege that he provided such information to ESPN.  Instead, he persists in attempting to impose VPPA liability on ESPN based on conduct and disclosures by third parties.  Because Plaintiff again fails to allege any disclosure of PII *by ESPN*, Plaintiff's VPPA claim should be dismissed with prejudice.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 1
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Prior to the Court's order dismissing Plaintiff's First Amended Complaint, Dkt. No. 38, several courts had already held that no VPPA liability could be imposed for disclosing anonymized identifiers where the plaintiff's theory of liability rested on the recipient "tak[ing] extra steps to connect the disclosure to an identity" through "us[ing] information 'collected from a variety of *other* sources.'" *Ellis v. Cartoon Network, Inc.* ("*Cartoon Network*"), No. 1:14-cv-484, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) (emphasis added); *In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443, 2014 WL 3012873, at *10 (D.N.J. July 2, 2014) ("*Nickelodeon*"); *In re Hulu Privacy Litig.* ("*Hulu*"), No. C11-03764, 2014 WL 1724344, at *8 (N.D. Cal. Apr. 28, 2014).  Since the Court issued its order, two more courts have dismissed VPPA claims following these cases, and have done so with prejudice.  *Locklear v. Dow Jones & Co.*, No. 1:14-cv-744, Dkt. 31 at 9-14 (N.D. Ga. Jan. 23, 2015) ("*Dow Jones*");[1] *In re Nickelodeon Consumer Privacy Litig.*, MDL No. 2443, 2015 WL 248334, *3 (D.N.J. Jan. 20, 2015) ("*Nickelodeon II*").  This Court should do the same.

Plaintiff once again asks the Court to disregard this unanimous, and mounting, string of judicial authorities and impose liability on ESPN for disclosing only the serial number of the Roku set-top box he used to stream ESPN video content to his television to Adobe, a data analytics company.  Plaintiff's Second Amended Complaint ("SAC") does nothing, however, to cure the defects that resulted in the dismissal of his earlier complaint.  To the contrary, Plaintiff alleges that his "analysis of the network traffic transmitted" from ESPN to Adobe confirms that only the "Roku serial number" is disclosed to Adobe, and he acknowledges that the information Adobe allegedly uses to identify particular individuals by their Roku serial numbers comes from "*other sources*," *not* ESPN.  SAC ¶¶ 22-23 (emphasis added).  As the Court stated in its prior order, liability could be imposed on ESPN if *it* had disclosed "*both* 'a unique identifier and a correlated look-up table'" connecting the identifier to a particular individual.  Dkt. No. 38 at 2

---

[1] The *Dow Jones* decision is attached as Exhibit A to the Declaration of Bryan H. Heckenlively, attached hereto ("Heckenlively Decl.").

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 2
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

(emphasis added).  Plaintiff does not, and cannot, allege that ESPN disclosed (or even had) a "look-up table."  Because the information allegedly allowing Adobe to identify individuals is from "other sources," and *not* from ESPN, this "is fatal" to Plaintiff's Complaint and alone compels dismissal.  *Dow Jones*, Heckenlively Decl., Ex. A, at 13.

Even if the Court were to accept Plaintiff's legally flawed theory that ESPN could be found liable based upon what *Adobe* may have done using data from *other* sources, Plaintiff's VPPA claim should still be dismissed because his allegation that Adobe "can, and does, identify specific persons" remains entirely "speculative."  Dkt. No. 38 at 2.  Under *Twombly/Iqbal*, he must allege facts to support a plausible inference that Adobe had information from other sources that would have allowed it to personally identify users and link those users to video selections— what the Court properly described as a "look-up table."  In this respect, the allegations in the SAC are just as threadbare and speculative as the ones the Court found insufficient in November, if not more so.  Plaintiff has abandoned two of the key documents that he relied on in the First Amended Complaint ("FAC"), thereby acknowledging that they did not support (and in fact contradict) his theory, and replaced them with a new document that does not support it either.  There is no reason to believe that Plaintiff will be able to find better support if given yet another opportunity to amend and, indeed, Adobe's privacy policy (which he incorporates again) continues to controvert his theory.

Finally, and independently, Plaintiff's VPPA claim should be dismissed because Plaintiff does not adequately allege that he was a "consumer," which the VPPA defines as a "renter, purchaser, or subscriber of goods or services from a video tape service provider."  18 U.S.C. § 2710(a)(1).  Plaintiff alleges that he was a "subscriber" and a "renter," but he does not fall within the common meaning of either term.  He does not allege that he registered or established an account with ESPN or paid money to ESPN to view video content.  Indeed, Plaintiff does not allege that his identity was ever known to ESPN.  Under these circumstances, Plaintiff cannot reasonably claim to be either a "subscriber" or "renter" of ESPN's video content or services.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 3
(No. 2:14-CV-00463)

At bottom, the fatal flaw in Plaintiff's VPPA claim against ESPN is that it is based not on information disclosed by ESPN, which Plaintiff admits does not personally identify users, but on Adobe's alleged use of information from "other sources." Plaintiff already has filed two amended complaints, one following this Court's order dismissing the FAC, and he has not pleaded any disclosure by ESPN that could itself identify him. No further amendment will cure either that defect or, if the Court finds it relevant, the speculative nature of Plaintiff's factual theory. For that reason, Plaintiff's SAC should be dismissed with prejudice.

## II.     BACKGROUND

### A.     The VPPA prohibits disclosures that "identify a person."

The "impetus" for the VPPA was a newspaper article profiling Judge Robert Bork "based on the titles of 146 films his family had rented from a video store." S. Rep. No. 100–599, at 5 (1988). Congress enacted the VPPA to "preserve personal privacy with respect to the rental, purchase or delivery of video tapes or similar audio visual materials." *Id*. at 1.

Under the VPPA, "[a] video tape service provider who knowingly discloses, to any person, personally identifiable information concerning any consumer of such provider" is subject to suit in federal court by any person "aggrieved" by such action. 18 U.S.C. § 2710(b)(1). "Personally identifiable information," referred to as "PII," is defined to include "information which identifies a person as having requested or obtained specific video materials." 18 U.S.C. § 2710(a)(3). Certain disclosures are excluded from liability, including disclosures made "incident to the ordinary course of business," to the consumer, or to law enforcement agencies pursuant to a warrant or court order. 18 U.S.C. § 2710(b)(2).

### B.     WatchESPN transmits Roku device serial numbers to Adobe.

Plaintiff alleges that, in addition to cable and satellite, ESPN "offers content to consumers via other media including its proprietary software application (the 'WatchESPN Channel') that it developed for use with the Roku digital media-streaming device." SAC ¶ 1. Roku devices, like other streaming media devices such as Apple TV and Google Chromecast,

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT - 4
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

stream movies, television shows, music, and other video and audio content to a user's television via the Internet.[2]  A Roku device connects to a user's television with a cable and contains a processor, wireless antenna, and memory to store video content as it streams into the device from the Internet.  Users access content through "channels" (also referred to as "apps") that they download from Roku using its "proprietary online digital media platform" called the Roku Channel Store.  SAC ¶ 10.

Plaintiff alleges that, starting in early 2013, he downloaded and began using WatchESPN on his Roku device "to watch sports-related events and news." *Id.* ¶ 26.  Users who download, install, and open WatchESPN are presented with a "main home screen" used to browse and view ESPN video content. *See id.* ¶ 11 & Fig. 1.  According to Plaintiff, each time he viewed video content on WatchESPN, a record containing the Roku device serial number and the video he viewed was sent to Adobe, "an unrelated third party data analytics company." *Id.* ¶ 13.  Indeed, Plaintiff references an apparently new technical "analysis of the network traffic transmitted" from ESPN to Adobe, which confirms that only the "Roku serial number" is disclosed to Adobe. *Id.* ¶ 23 (emphasis added).  Plaintiff does not allege that he provided any personal information to ESPN through WatchESPN, nor could he since there is no registration process or other means by which a WatchESPN user can provide such information.  Nor does he allege that he paid ESPN any money to download or use WatchESPN.

### C.   Plaintiff contends that Roku device serial numbers "identify a person" based on conclusory allegations regarding Adobe.

Plaintiff alleges Adobe identifies users based on their Roku device serial numbers not based on any information from ESPN, but rather from "*other sources*."  SAC ¶ 22 (emphasis added).  In support of this claim, Plaintiff cobbles together random documents and his own speculation to allege that Adobe builds a "profile" of individual consumers using "information that Adobe previously collected from *other sources*." *Id.*  (emphasis added).  He alleges that,

---

[2] For basic information on the Roku device, *see generally* https://www.roku.com/meet-roku.

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

using these profiles, Adobe can and does associate Roku device serial numbers received from WatchESPN with particular individuals and their video selections. *Id.* ¶¶ 22-25.

Even if that were a basis for VPPA liability, which it is not for reasons explained further below, Plaintiff does not allege a single fact to support a reasonable inference that Adobe could have, much less did, engage in such conduct. There is no allegation that Adobe had a "look-up table" from *any* source that would have permitted it to identify individuals based on Roku device serial numbers. Indeed, if Adobe did have such a "look-up table," using it would be in direct violation of Adobe's privacy policy, which Plaintiff incorporates by reference into the SAC but then conspicuously ignores in this respect. *Infra* at 15.

### D.  The Court dismissed the First Amended Complaint upon similar allegations.

The allegations in the SAC closely track those in the FAC. In the FAC, Plaintiff also admitted that the information disclosed by WatchESPN did not itself, without more, identify any particular individual. Instead, his theory was based on Adobe's alleged actions to combine the data from WatchESPN with data that Adobe received from Roku or other third parties. Those allegations were based in large part on Adobe and Roku documents that either did not support or contradicted Plaintiff's theory of liability.

As a result, on November 24, 2014, the Court granted ESPN's motion to dismiss the FAC. The Court held that the "information allegedly disclosed is not PII (i.e., Plaintiff's Roku device serial number and his viewing records)." Dkt No. 38 at 2. The Court concluded (a) that "Plaintiff's legal theory fails" because he had not alleged that *ESPN* disclosed "both 'a unique identifier and a correlated look-up table'" and (b) that "it is speculative to state that [Adobe] can, and does, identify specific persons as having watched or requested specific video materials from the WatchESPN application." Dkt. No. 38 at 2. Because the Court was "not convinced that further amendment would be futile," Plaintiff was permitted to amend his complaint. *Id.* ESPN did not oppose Plaintiff's request for an additional 30 days to investigate and make any amendments he thought would address the Court's concerns. Dkt. No. 39. Despite the ample

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 6
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

1 time, those amendments have not cured the defects in the FAC.  No further amendment could

2 either, and the Court should dismiss the claim with prejudice for the reasons explained below.

3 ### III.   ARGUMENT

4       A complaint must be dismissed when a plaintiff's allegations fail to state a claim upon

5 which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Although allegations of fact are taken as

6 true, "legal conclusion[s] couched as a factual allegation … are not entitled to the assumption of

7 truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  A "plaintiff's obligation to provide the

8 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

9 formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v.*

10 *Twombly*, 550 U.S. 544, 555 (2007).  The complaint must instead contain "sufficient factual

11 matter" apart from legal conclusions "to 'state a claim ... that is plausible on its face.'" *Iqbal*,

12 556 U.S. at 678.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory

13 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a

14 claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir.

15 2009); *see also Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1134-36 (9th Cir. 2014); *Eclectic Properties*

16 *E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998-99 (9th Cir. 2014).  The "court need not

17 … accept as true allegations that contradict matters properly subject to judicial notice or by

18 exhibit," *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), amended on

19 other grounds, 275 F.3d 1187 (9th Cir. 2001), and may not indulge unwarranted inferences to

20 save a complaint. *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1064-65 (9th

21 Cir. 2008).

22      **A.**    **Plaintiff fails to state a VPPA claim because he does not allege any disclosure**

23               **of personally identifiable information.**

24          **1.**    **Plaintiff does not allege any disclosure of PII by WatchESPN.**

25       Plaintiff alleges that WatchESPN disclosed two pieces of information to Adobe for users

26 accessing ESPN video content on Roku devices: (1) Roku device serial numbers, and (2) video

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 7
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

content selection.  *See, e.g.,* SAC ¶¶ 2, 13, 23, 25, 29.  Neither personally identifies Plaintiff or any other WatchESPN user as having requested or obtained specific video content.  And, Plaintiff does not allege that he or any other WatchESPN user provided information to ESPN that could be used to personally identify him, such as name or address.  He therefore does not, and cannot, allege that WatchESPN disclosed any PII.  Rather, Plaintiff's theory of liability turns on additional steps Adobe allegedly took after receiving Roku device serial numbers and video content selections from WatchESPN using information it obtained from "other sources" – not ESPN.  *Id.* ¶ 22.  Under well settled authority, including a string of unanimous judicial opinions, Plaintiff's claim fails as matter of law.

The VPPA defines PII to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3).  As the Senate Report explains, the VPPA prohibits disclosure of "information that identifies a *particular person* as having engaged in a specific transaction with a video tape service provider."  S. Rep. No. 100-599, at 12 (emphasis added).  Accordingly, courts have interpreted the VPPA as applying only to disclosures that "identif[y] a specific person and tie[] that person to particular videos that the person watched."  *Hulu*, 2014 WL 1724344, at *8; *see also id.* ("The Senate Report shows the legislature's concern with disclosures linked to particular, identified individuals."); *Nickelodeon*, 2014 WL 3012873, at *10 (PII "is information that must link 'a *specific, identified person* and his video habits'") (citing *Hulu*, 2014 WL 1724344, at *12, 14).

Courts have also construed the VPPA to require that the information disclosed by the defendant "without more, itself" identify a person.  *Nickelodeon*, 2014 WL 3012873, at *10.  *See also Cartoon Network*, 2014 WL 5023535, at *3; *Dow Jones,* Heckenlively Decl., Ex. A, at 14; *Nickelodeon II*, 2015 WL 248334, at *3.  If the information disclosed, such as a unique identifier, does not itself identify a person, but the plaintiff's theory rests on what further steps the recipient can take with the information by combining it with data obtained from "other

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 8
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

sources," no VPPA liability may lie.  *Dow Jones,* Heckenlively Decl., Ex. A, at 13-14; *Cartoon Network*, 2014 WL 5023535, at *3.

This has been the clear holding of every court to consider the issue.  ESPN addressed two such cases in its briefing on the motion to dismiss the FAC—*Nickelodeon* and *Hulu*.  In *Nickelodeon*, the court rejected a VPPA claim based on alleged disclosures that "might one day serve as the basis of personal identification after some effort on the part of the recipient."  2014 WL 3012873, at *11.  The plaintiffs alleged that a Viacom cookie[3] collected and shared with Google a username, unique device identifier, and video selections, among other information.  *Id.* at *1-2.  The court held that these alleged disclosures did not constitute PII because they were "not information that, *without more*, identifies a person—an actual, specific human being—as having rented, streamed, or downloaded a given video."  *Id.* at *11 (emphasis added).  It was immaterial what could have been done with the information "after some effort on the part of the recipient."  *Id.*  The court granted the plaintiffs leave to amend, and then dismissed their VPPA claims with prejudice, holding that allegations about information that Google had from other sources did not "change[] the fact that Viacom's disclosure does not—'without more'—identify individual persons."  *Nickelodeon II*, 2015 WL 248334 at *3.

Similarly, in *Hulu*, the court rejected all of the plaintiffs' VPPA claims except those based on alleged disclosures by Hulu of Facebook IDs to Facebook through cookies placed by Facebook on users' computers.  The court found a material issue of fact as to whether, in that particular "context," Facebook IDs were "more than a unique, anonymous identifier" because they "could show the Hulu user's identity on Facebook."  2014 WL 1724344 at *14.  *See also Nickelodeon*, 2014 WL 3012873, at *12 ("Simply put, in a socially networked world a Facebook ID is at least arguably 'akin' to an actual name that serves without more to identify an actual

---

[3] As the *Nickelodeon* court explained, the so-called "cookies" were "text files" that Viacom placed on a user's computer "to acquire certain information" about the user.  *See* 2014 WL 3012873, at *1.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 9
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

person.").  The Court did not allow the plaintiffs to proceed on a claim based on the disclosure of a unique user identification number to comScore, a data analytics company like Adobe, despite that the plaintiffs also alleged that Hulu created a public "profile page" for each user that included the user's first and last name.  *Hulu*, 2014 WL 1724344, at *3.  Because the URL for the profile page included the same unique identification number that the plaintiffs alleged Hulu transmitted to comScore, the plaintiffs alleged that comScore "had the 'key' to locating users' associated profiles that revealed the names the users provided when they signed up for Hulu." *Id.* at *4.  The court held that, even assuming that such "anonymous disclosures … hypothetically could have been linked to video watching," that was "not enough to establish a VPPA violation." *Id*. at *1, *12.

After the parties completed briefing on ESPN's motion to dismiss the First Amended Complaint, two more courts—in addition to the *Nickelodeon* court that issued a second decision—have dismissed VPPA claims with prejudice in cases filed by Plaintiff's counsel here and asserting claims nearly identical to those in this case.   In the first, *Cartoon Network*, 2014 WL 5023535, at *3, the court held that unique identifiers associated with Android-based mobile phones were not PII when disclosed by Cartoon Network's Android app to Bango, a data analytics company.  Echoing *Nickelodeon*, the court concluded that PII is information that "*in its own right*, without more" ties an individual to video materials, and that "*[t]he emphasis is on disclosure, not comprehension by the receiving person.*" *Id.* (emphasis added).  The Android IDs disclosed to Bango did not qualify as PII under that standard because the plaintiff's theory turned on Bango "us[ing] information 'collected form a variety of other sources'" to connect Android IDs to specific individuals. *Id.* (quoting the complaint).  In other words, "[f]rom the information disclosed by the Defendant alone, Bango could not identify the Plaintiff or any other members of the putative class." *Id.*

In the most recent case, *Dow Jones*, the court held that Roku device serial numbers disclosed to mDialog, another data analytics firm, were not PII—regardless of what the plaintiff

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 10
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

1   alleged mDialog could do with the serial numbers.  The Roku device serial numbers did not

2   themselves identify individuals, and there was no allegation that Dow Jones gave mDialog any

3   other contextual information linking those serial numbers to particular individuals.  *Dow Jones,*

4   Heckenlively Decl., Ex. A, at 13.  Instead, as in the *Nickelodeon*, *Hulu*, and *Cartoon Network*

5   cases, "mDialog had to take further steps, i.e., turn to sources other than Dow Jones, to match the

6   Roku number to Plaintiff," which the court held was "fatal to Plaintiff's complaint."  *Id.*; *see also*

7   *id.* ("The instant case is indistinguishable from [*Cartoon Network*].").  Because no amendment

8   could change the limited nature of the information disclosed by Dow Jones, the Court dismissed

9   the VPPA claim with prejudice.  *Id* at 14.[4]

10         The standard established in these VPPA decisions is consistent with this Court's order

11  dismissing the FAC and dictates the same result here.  As in *Dow Jones*, the only information

12  that Adobe receives from WatchESPN is the Roku device serial number and the user's video

13  selection.  That information does not, without more, identify a particular person to Adobe.  Upon

14  dismissing the First Amended Complaint, the Court allowed Plaintiff to amend so that he could

15  attempt to identify information, such as a "correlated look-up table" that ESPN may have

16  disclosed to Adobe along with the Roku device serial numbers.  Dkt. No. 38 at 2.  He has not.

17  To the contrary, Plaintiff's "analysis of the network traffic transmitted from [WatchESPN] to

18  Adobe's servers" apparently confirmed that the only data transmitted are "Roku device serial

19

20  [4] These VPPA decisions are in keeping with a long line of cases holding that anonymous unique
    identifiers, without more, are not PII.  *See, e.g.*, *Viacom Int'l Inc. v. YouTube Inc.*, 253 F.R.D.
21  256, 261-62 (S.D.N.Y. 2008) (rejecting YouTube's argument that disclosing the unique "login
    ID" of the user who watched a YouTube video, the IP address of the user's computer, and the
22  "identifier for the video" would expose it to liability under the VPPA because, "'the login ID is
    an anonymous pseudonym …' which *without more* 'cannot identify specific individuals.'");
23  *Pruitt v. Comcast Cable Holdings*, 100 F. App'x 713, 716 (10th Cir. 2004) (a unique identifier
    for Comcast cable boxes, referred to as a "unit address," was not PII under the Cable Act, 47
24  U.S.C. § 551, *et seq.*, because "one cannot connect the unit address with a specific customer"
    without referring to Comcast's billing system); *Johnson v. Microsoft Corp.*, No. C06-0900RAJ,
25  2009 WL 1794400, at *4 (W.D. Wash. June 23, 2009) (holding that an IP address is not PII
    because it does not "identify a person," only a computer).
26

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 11
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

numbers under the label 'visitor ID'" and "video viewing histories." SAC ¶ 23. There is still no

allegation that ESPN gave Adobe a "correlated look-up table" or any other information.

Accordingly, Plaintiff is left with the theory that Adobe combines Roku device serial

numbers with "corresponding user information *that it already possesses*" in order to personally

identify WatchESPN users. SAC ¶ 25 (emphasis added). By his admission, this user

information is "information that Adobe previously collected from *other sources*, including email

addresses, account information, or Facebook profile information, including photos and

usernames." SAC ¶ 22 (internal quotation marks omitted; emphasis added.) Just as in *Dow

Jones,* the allegation that the identifying information came from "other sources" and not from

ESPN "is fatal to Plaintiff's complaint." *Dow Jones,* Heckenlively Decl., Ex. A, at 13. *See also

Cartoon Network*, 2014 WL 5023535, at * 3 (not PII because "the disclosure by the Defendant

here required Bango to collect information from other sources"). Because Adobe "could not

identify the Plaintiff or any other members of the putative class" based on "the information

disclosed by the Defendant alone," it is not PII and Plaintiff's VPPA claim fails as a matter of

law. *Id.* at *3. No amendment can change that, and this Court should join the others in

dismissing the VPPA claim with prejudice. *See Dow Jones,* Heckenlively Decl., Ex. A, at 14;

*Nickelodeon II*, 2015 WL 248334, at *3; *Cartoon Network*, 2014 WL 5023535, at * 3.

### 2.    Plaintiff's allegations regarding Adobe are speculative, and could not save his claim even if they were relevant (which they are not).

In an attempt to overcome his failure to identify any disclosure of PII by WatchESPN,

Plaintiff alleges that Adobe "identified Eichenberger as having watched specific video materials"

because Adobe "automatically correlated" the Roku device serial numbers "with existing user

information possessed by Adobe" that it received from "other sources." *See* SAC ¶¶ 22, 29; *see

also id.* ¶¶ 23, 25, 43. Because these allegations do not concern any disclosure actually made by

WatchESPN, they are irrelevant to Plaintiff's VPPA claim and the Court need not consider them.

As explained below, however, even accepting Plaintiff's flawed theory of liability, these

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 12
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington   98104-2323
office 206 587 0700   fax 206 587 2308

allegations are inadequately pled and "speculative," as the Court previously found in dismissing the FAC.  Plaintiff's speculative and conclusory statements are not supported by a single factual allegation that would permit a reasonable inference that Adobe could use Roku device serial numbers to personally identify users, let alone that Adobe is actually engaged in such conduct.  And the documents that Plaintiff has cited to support his theory either undermine it or are irrelevant.  Accordingly, even if the Court considers these allegations, they cannot save Plaintiff's claim from dismissal.  *Cf. Nickelodeon II*, 2015 WL 248334, at *3-4 ("Even if the Court were to consider what Google could do with the information, rather than the nature of the information itself, Plaintiffs' claim would still fail because it is entirely theoretical.").  In the FAC, Plaintiff's theory was that Adobe had "a correlated look-up table" that allowed it to personally identify individuals based on their Roku device serial numbers.  But, as the Court observed, the allegations in support of that theory were "too speculative to meet the *Iqbal/Twombly* plausibility standard."  Dkt. No. 38 at 2.  "Even if Adobe does 'possess a wealth of information' about individual consumers, it is speculative to state that it can, and does, identify specific persons as having watched or requested specific video materials from the WatchESPN application" in the absence of factual allegations showing that Adobe had a "look-up table." *Id.*

Plaintiff has made only semantic changes to the complaint that do not affect the viability of his theory, and he has dropped several key pieces of evidence that were central to his prior complaint, acknowledging that they do not support his allegations or, as demonstrated below, affirmatively contradict them.  Although he no longer uses the term "look-up table," his theory remains the same and he still alleges no facts to support it.   Plaintiff's theory, once again, is that Adobe "associates" the Roku device serial numbers it receives from WatchESPN with "user information that it already possesses" in order to identify users "as having watched specific video materials."  SAC ¶ 25.  This theory makes sense only if Plaintiff could allege that Adobe "already possesses" Roku device serial numbers that Adobe has linked to particular individuals.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 13
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

In other words, the theory still requires that Adobe have the equivalent of a "look-up table" that identifies individuals by their Roku device serial numbers. Otherwise, there would be no way for Adobe to match the information it receives from WatchESPN—Roku device serial numbers and video selections—with the individual user "profiles" allegedly in its databases.

Plaintiff still does not allege facts supporting a plausible inference that Adobe has such a look-up table. Plaintiff offers the conclusory allegation that Adobe "collects and maintains an enormous amount of information about individual consumers' online behaviors (as well as unique identifiers associated with individual consumers' various electronic devices) from a variety of sources," which information includes "'email addresses, account information, or Facebook profile information, including photos and usernames.'" SAC ¶¶ 21-22. These allegations, if proven, would not even establish that Adobe collects Roku device serial numbers from sources other than WatchESPN, let alone that Adobe has associated those serial numbers with particular individuals to create a "look-up table." As before, the allegation that Adobe has a "wealth of information" is not enough. *See* Dkt. No. 38 at 2.

Plaintiff's other allegations do not bridge the gap between the information Adobe allegedly received from other sources and the conclusion that Adobe had a look-up table for Roku device serial numbers. He has attempted to make that leap by alleging that "Adobe uses a technique known as "Cross-Device Visitor Identification" (or 'Visitor Stitching')" to associate individuals with multiple devices. SAC ¶¶ 22-24. But this allegation is based on documents that do not support Plaintiff's theory and, if anything, undermine it.[5] As the Ninth Circuit has explained, courts "need not accept as true allegations contradicting documents that are

---

[5] Because Plaintiff relies on these documents in the SAC, they are incorporated by reference therein and therefore may be considered on this motion to dismiss. *See Lapidus v. Hecht*, 232 F.3d 679, 682 (9th Cir. 2000) (on Rule 12 Motion, court may consider "'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading'") (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds*, *Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 14
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington 98104-2323
office 206 587 0700   fax 206 587 2308

referenced in the complaint or that are properly subject to judicial notice." *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  *See also Sprewell*, 266 F.3d at 988; *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss.").

The first of the two documents that Plaintiff cites is Adobe's privacy policy for its analytics services.  Plaintiff also cited this policy in the FAC, and there is no reason for the Court to give it more weight now.  Indeed, the document flatly contradicts Plaintiff's theory:  "Adobe does not use the information we collect for a company except as may be allowed in a contract with that company," which "is usually limited to providing our services to the company," and even in those instances where Adobe may share information between companies, it is "'aggregated' information" that "*is anonymous and does not identify individuals*."  Heckenlively Decl., Ex. B (emphasis added).

The other document is a marketing report prepared by ESPN using Adobe statistics, and it is not relevant.  According to Plaintiff, page 8 of the report shows that ESPN has "publicly represented" that Adobe can "identify specific consumers and track them across various platforms and devices."  SAC ¶ 24.  That allegation is flat wrong for at least two fundamental reasons.

First, as the title of the report makes clear – "ESPN *Mobile* Performance Targeting Insights" – the report is about ESPN's products for ***mobile devices*** like smartphones and tablets—not home-streaming devices like the Roku.  Although the specific page that Plaintiff cites goes beyond mobile devices in limited respects, it does *not* implicate Roku devices.  Namely, the document reports that, in May 2012, users viewed content on a WatchESPN application for "339.6 million minutes across computers, smartphones, tablets, and XBOX."

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 15
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Heckenlively Decl., Ex. C at 8.[6]  The Roku device is conspicuously absent from that list.  This is no surprise, as there is no allegation that WatchESPN was even available on the Roku device when ESPN released the report in the Spring of 2012.[7]

Second, nothing in the report demonstrates that Adobe is identifying individuals at all, much less linking them to multiple devices.  Plaintiff does not and cannot allege that it is necessary to identify individuals or determine whether one individual is connected to more than one device to calculate the total amount of time all users on all platforms spent viewing WatchESPN content.  *See* Heckenlively Decl., Ex. C at 8.  All of those numbers are a function of basic arithmetic.  To the extent Plaintiff's focus is on the statement that "Regular-season college football generated 6.1 million unique viewers," he fares no better.  *See id.*  There is no basis for concluding that "unique viewers" in that context refers to the number of *individuals* who accessed the WatchESPN application instead of the number of *devices* on which WatchESPN was accessed, much less that Adobe actually *identified* those individuals.[8]

---

[6] As the report makes clear, ESPN also offers versions of the WatchESPN application for platforms other than the Roku device.  Page 8 of the report discusses use of the WatchESPN application on computers, smartphones, tablets, and XBOX.  It also includes what appears to be a photograph of the WatchESPN application running on an Apple iPad.  Heckenlively Decl., Ex. C at 8.

[7] Plaintiff alleges that he downloaded WatchESPN in "early 2013."  SAC ¶ 26.  In reality, WatchESPN was not available for Roku devices until November 2013.  Even accepting Plaintiff's date as correct, however, there is no basis upon which to conclude that a report issued in Spring 2012 is relevant.

[8] The faulty allegation that ESPN "publicly represented" that Adobe can "identify specific consumers and track them across various platforms and devices" (SAC ¶ 24) is the only non-conclusory allegation of knowledge in the SAC.  Because that allegation is based on an ESPN report that contains no such representation, Plaintiff's VPPA claim should also be dismissed for failure to sufficiently allege that ESPN "*knowingly*" disclosed PII, as required under 18 U.S.C. § 2710(b).  *See Wistron Corp. v. Phillip M. Adams & Associates, LLC*, No. C-10-4458 EMC, 2011 WL 4079231, at *5 (N.D. Cal. Sept. 12, 2011) ("Post-*Twombly* and *Iqbal*, courts have typically rejected conclusory allegations of knowledge."); *In re Park West Galleries, Inc.,* MDL No. 09-2076RSL, 2010 WL 2640249, at *5 (W.D. Wash. June 25, 2010) ("Although an allegation of  knowledge or intent is logically an allegation of fact regarding defendant's state of mind, *Iqbal* suggests that such allegations should be disregarded if not supported by additional, more concrete, factual allegations.").

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 16
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

Moreover, the documents Plaintiff relied heavily on in the FAC and has now jettisoned confirm that Adobe does not use Roku device serial numbers from WatchESPN to identify individuals. *Cf. Reddy v. Litton Indus.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (amended complaint may not allege facts inconsistent with earlier pleading). One such document is an interview with Christopher Comstock, a senior project manager at Adobe. *See* FAC ¶¶ 25-27, 31. In the interview, Mr. Comstock plainly contradicted Plaintiff's theory that Adobe is engaged in "Cross-Device Visitor Identification." Mr. Comstock referred to this task of "figuring out who may be the user across numerous devices" as "probabilistic matching." Heckenlively Decl., Ex. D. But he went on to say that *Adobe does not offer probabilistic matching technology*. If a *customer already is* using a probabilistic matching technology offered by other companies, Adobe allows the customer to continue using it, but, according to Mr. Comstock, Adobe does not have that capability. *Id.* ("We sit in an agnostic point of view in that we provide the tools that let customers choose what to do with their data."). ESPN made this point in moving to dismiss the FAC, and Plaintiff has now omitted the interview from the SAC, effectively admitting that it discredits his theory of liability.[9]

Without any factual allegations establishing that Adobe had a "look-up table" or anything else enabling it to identify individuals using Roku device serial numbers, all that remains are "mere conclusory statements," which the Court need not accept as true under *Iqbal* and *Twombly*. *See Levitt*, 765 F.3d at 1134-36; *Eclectic Properties*, 751 F.3d at 998-99; *Routt v. Amazon.com, Inc.*, No. C12-1307JLR, 2012 WL 5993516, at *2-3 (W.D. Wash. Nov. 30, 3012) (granting motion to dismiss where plaintiff alleged that Amazon had "control" over the actions of a third party but did "not allege sufficient non-conclusory factual matter to state a plausible claim that the relationship between Amazon and its Associates is anything other than the

---

[9] Plaintiff citation to Roku's Privacy Policy is inapposite. SAC ¶ 17. At most, it shows that Roku device serial numbers are personally identifying *to Roku*, the seller of the Roku device. In any event, there is no allegation that Roku shared any such personally identifying information with Adobe or that WatchESPN sent information about video selections to Roku.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 17
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

relationship described in the Agreement," which did not give Amazon such control).  As the

Court concluded in dismissing the FAC, such "speculative" allegations are insufficient to state a

VPPA claim.  Dkt. No. 38 at 2; *see also Nickelodeon II*, 2015 WL 248334, at *3-4 (quoting this

Court's order dismissing the FAC and finding the complaint at issue there "wholly speculative"

because it lacked any allegation that Google "'can, and does, identify' any of the Plaintiffs");

*Nickelodeon*, 2014 WL 3012873, at *2 n.3 (refusing to consider allegation that Viacom and

Google "'were able to identify specific individuals'" by connecting "online activity and

information with offline activity and information" because it was "entirely conclusory" and

supported by "no facts … which indicate when or how either Defendant linked the online

information it collected with extra-digital information about the Plaintiffs").  Thus, even if it

were relevant what Adobe does (or could do) with the information received from WatchESPN,

the SAC should be dismissed with prejudice.

> **B.    Plaintiff fails to state a VPPA claim because he is not a "consumer" under the VPPA.**

Even if Plaintiff could allege that WatchESPN disclosed PII, which he cannot, his claim

should be dismissed because he is not a "consumer" within the meaning of the VPPA.  The

VPPA prohibits the knowing disclosure of "personally identifying information concerning any

*consumer*" of a video tape service provider.  18 U.S.C. § 2710(b)(1) (emphasis added).  A

"consumer" is defined as "any renter, purchaser, or subscriber of goods or services from a video

tape service provider." *Id.*, § 2710(a)(1).  Plaintiff alleges that he was a "subscriber" because he

"downloaded, installed, and watched videos using the Watch ESPN Channel," and that he is a

"renter" because ESPN "grants him a temporary license to access and view specific videos in

exchange for" viewing advertisements.  SAC ¶ 40.  His allegations do not support either

conclusion.

Because the VPPA does not define "subscriber" or "renter," these terms are "interpreted

in accordance with their ordinary meaning." *BP Am. Prod. Co. v. Burton*, 549 U.S. 84, 91

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

(2006) (citing *Perrin v. United States*, 444 U.S. 37, 42 (1979)).  Merriam-Webster's Dictionary defines the verb "to subscribe" as "to enter one's *name* for a publication or service" or "to receive a periodical service *regularly* on order."[10]  Plaintiff does not allege that he provided his name or any other information to WatchESPN or that he viewed content regularly on WatchESPN.  Instead, he alleges that he downloaded WatchESPN from the Roku channel store and watched "numerous" clips using his Roku device.  SAC ¶ 42.  In *Hulu*, the court concluded that Hulu users were subscribers, in part because their "'individual Hulu profile pages ... included name, location preference information designated by the user as private, and Hulu username,'" all of which were available to comScore.  *In re Hulu Privacy Litig.*, No. C11-03764, 2012 WL 3282960, at *8 (N.D. Cal. Aug. 10, 2012).  Here, by contrast, there is no allegation that ESPN knew the identity of Plaintiff or any other WatchESPN user.[11]

As for the allegation that Plaintiff was a "renter," Merriam-Webster defines the verb "to rent" as "to take and hold under an agreement to *pay* rent," and the noun as "the amount *paid* by a hirer of personal property to the owner for the use thereof."[12]  There is no allegation that Plaintiff paid any money to ESPN to use WatchESPN, and therefore no basis for his claim that he is a renter.  His allegation that he viewed advertisements as an apparent substitute for payment does not change this result.  In *Hulu,* the court held that "the terms 'renter' and 'buyer' necessarily imply payment of money."  *Hulu*, 2012 WL 3282960, at *8.  Because Plaintiff's allegations do not show that he is either a "subscriber" or a "renter" under the VPPA, he is not a "consumer" and therefore cannot state a VPPA claim.

---

[10] *Available at* http://www.merriam-webster.com/dictionary/subscribe (emphasis added).

[11] ESPN respectfully submits that the *Cartoon Network* and *Dow Jones* courts interpreted *Hulu* too broadly in concluding that the plaintiffs in those cases were subscribers within the meaning of the statute.

[12] *Available at* http://www.merriam-webster.com/dictionary/rent (emphasis added).

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 19
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's Second Amended Complaint should be

dismissed with prejudice.

DATED this 11th day of February, 2015.

MUNGER TOLLES & OLSON LLP

*s/ Glenn D. Pomerantz*
Glenn D. Pomerantz
Email:  glenn.pomerantz@mto.com
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, CA 90071
Telephone: 213-683-9100

Rosemarie T. Ring
Email:  rose.ring@mto.com
Jonathan H. Blavin
Email:  jonathan.blavin@mto.com
Bryan H. Heckenlively
Email:  bryan.heckenlively@mto.com
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA 94105
Telephone : 415-512-4000

*Admitted Pro Hac Vice*

CAIRNCROSS & HEMPELMANN, P.S.

*s/ J. Thomas Richardson*
J. Thomas Richardson
Email: trichardson@cairncross.com
Ana-Maria Popp
Email: apopp@cairncross.com
Cairncross & Hempelmann, PS
524 Second Avenue, Suite 500
Seattle, WA  98104-2323
Telephone:  206-587-0700

Counsel for ESPN, Inc.

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT - 20
(No. 2:14-CV-00463)

**Certificate of Service**

I, Bryan H. Heckenlively, certify under penalty of perjury that on February 11, 2015, I electronically filed this document entitled Defendant's Motion to Dismiss Plaintiff's First Amended Complaint using the CM/ECF system which will send notification of such filing to the following persons:

Clifford A. Cantor
627 208th Avenue SE
Sammamish, WA  98074
Cliff.cantor@outlook.com
*Counsel to Plaintiff*

Jay Edelson
Rafey S. Balabanian
Benjamin H. Richman
J. Dominick Larry
Edelson PC
350 North LaSalle Street
Suite 1300
Chicago, IL  60654
jedelson@edelson.com
rbalabanian@edelson.com
brichman@edelson.com
nlarry@edelson.com
*Counsel to Plaintiff*

DATED this 11th day of February, 2015, at San Francisco, California.

*s/ Bryan H. Heckenlively*
Bryan H. Heckenlively
MUNGER, TOLLES & OLSON LLP
560 Mission Street
Twenty-Seventh Floor
San Francisco, CA 94105
Telephone: 415-512-4000
E-mail: bryan.heckenlively@mto.com

DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
FIRST AMENDED COMPLAINT - 21
(No. 2:14-CV-00463)

CAIRNCROSS & HEMPELMANN, P.S.
ATTORNEYS AT LAW
524 Second Avenue, Suite 500
Seattle, Washington  98104-2323
office 206 587 0700   fax 206 587 2308